## Enoch C. Young

*vs.*

## Mary C. Young.

In proceedings for divorce any course of action upon the part of the plaintiff, which is designed, and tends, and operates, to deprive or exclude a defendant from setting up and establishing a defence, which, if established, would prevent the granting of the divorce, is a fraud upon the administration of justice, as well as a fraud upon defendant. The foregoing applied to the facts set out at length in the opinion in this case, the judgment therein being accordingly set aside, defendant allowed to answer, and the action directed to stand for trial as if no judgment had been entered therein.

This is an action for divorce, brought in the district court for St. Louis county. The defendant did not appear in the action, and a judgment for divorce was rendered. She afterwards applied to the court to have the judgment vacated, and that she be permitted to answer, and the case stand for trial as if no judgment had been entered. This application was denied, and from the order denying the same, the defendant appeals to this court. A full statement of the case appears in the opinion of the court.

Brisbin & Palmer, for Appellant.

Smith & Gilman and Egan & Billson, for Respondent.

*By the Court.*—Berry, J.—Judgment having been rendered dissolving the marriage contract existing between the above

named parties, the defendant, Mary E. Young, who did not appear in the action, but was defaulted, made application (January 5th, 1871,) to the court in which the judgment was rendered, to have said judgment vacated, and that she be permitted to answer, and the case stand for trial as if no judgment had been entered therein. From the *order* denying her application, defendant appeals to this court, as she is authorized to do by subdiv. 6, sec. 8, ch, 86, Gen Stat., which permits an appeal " from a final order affecting a substantial right, made * * * upon a summary application in an action after judgment." The written direction of the court, in this instance, denying the application, being an order, not only in terms, but under the statutory definition of an order, (sec. 1, ch. 67, laws 1867,) there is no foundation of fact on the record for plaintiff's objection, that the appeal does not lie, because it is taken from a *refusal* of an order, and not from an *order*.

It is claimed in this case that the service of the summons and complaint upon the defendant in the action for divorce, and the subsequent proceedings in, and with reference to the action, were of such a nature that they operated as a fraud upon the court, and upon the defendant.

This claim is based upon the following facts, among others: In March 1870, while the parties were residing in this state at the Dalles of the Saint Louis River, an arrangement was made between them in accordance with which defendant was to go to Canada to put herself under medical treatment. On the morning of her departure (March 29th, 1870,) she was informed by her husband, that a summons would be served on her on that day (according to her affidavit.)

It is apparent from other statements in her affidavit, that she understood that the summons referred to was a summons in an action for divorce, and the plaintiff swears that he told her that he intended to get a divorce. Soon after, and on the

same day, while she and her husband were on their way to the point at which she was to take the stage for Canada, the summons and complaint were served upon her. There is some discrepancy in the accounts given by the parties of the place and manner of service, and as to her examination of the papers, but we do not regard it as important.

On the same day, and shortly after said service, she was driven by her husband to Twin Lakes, at which point she took stage for Tilsonburgh, Canada, arriving there in a few days, and remaining there until some time in the early part of November, following, when she was visited by her father, and brought by him to Blue Earth City in this state, his place of residence.

Her husband left her at Twin Lakes, on said March 29th, and she has never seen him since. It also appears that the facts of her departure, and of her residence at Tilsonburgh, were not communicated to her parents, who resided at Blue Earth City, and that they did not learn that the action for divorce had been commenced, or that defendant was not living with plaintiff, or had been sent to Canada, until about November 1st, 1870, some two months after the time, (September 3d,) when the judgment of divorce was rendered. It appears, however, that she was privy to, and desired the concealment of these matters from her parents, though she swears, (and it is not denied,) that he requested her to keep the proceedings private, and that at his request she directed her letters to him at Superior, Wisconsin, although he resided in Minnesota near a post office, he representing to her that it was very important that no one should know where she was. She also swears, (and this is not denied,) that he falsely represented to his friends and acquaintances, that she had gone on a visit to her father at Blue Earth City, and was there remaining; and that he studiously and purposely concealed the fact that she had been sent to Tilsonburgh, in order more effectually to carry out his plan of obtain-

ing a divorce.  It is quite apparent from defendant's letters, and other evidence, that at the time of her departure she was aware of her husband's intention to apply for a divorce, and that during her stay in Canada she was aware that the proceedings had been commenced; and there are very strong reasons for believing that she expected that he would succeed in procuring the divorce; and her confession and letters would appear to show still farther, that she believed her conduct to have been such that he was entitled to a divorce, and that she had no valid defence to urge against his application for the same.    On the other hand, there is nothing to show, and the plaintiff in his affidavit denies that he ever made to the defendant any promises or representations that the proceedings for a divorce would not be consummated, or that a divorce would not be obtained.    He also denies that he made any other statements calculated to defraud or mislead her, or throw her off her guard.

It appears, however, from the affidavit of the defendant, that a short time before she left Minnesota and shortly after the supposed discovery that she was afflicted with disease, plaintiff "began to talk of sending her away, and induced her to believe that she could no longer live with him as his wife, because of the existence of said disease, but told her that if she would consent to leave Minnesota and go to some distant part of the country, and put herself under medical treatment, and get cured of her disease, he would remain, sell their property, and join her with the children, and then they could all settle down and live together, in some place where their previous history was unknown, and bring up their children under their joint care and protection;" that she consented to this arrangement, "being in great distress of mind   *   *   and ignorant of her rights in the premises."    The plaintiff deposes that after having notified the defendant that their relations as

husband and wife were terminated, he "did hesitate as to the proceedings for a divorce, and the consequent publicity of defendant's crimes; that they did talk together as to how they might live together as unrelated persons, in a strange place, or as brother and sister, and that they might have joint care over their children, and a joint pleasure in them; but he denies that he ever, at any time, said to defendant, or other person, that he would not procure a divorce, or that he promised, or represented that he would live with defendant in any capacity whatever." Letters passed between the parties quite frequently during defendant's abode in Tilsonburgh, written in an apparently kind and affectionate spirit, plaintiff enclosing money from time to time to defendant with which to pay her expenses, and defendant acknowledging its receipt. None of the plaintiff's letters produced upon the hearing of defendant's application, allude, however, to the divorce.

The summons having been served, March 29th, as before stated, an affidavit of defendant's default was made, May 4th; and May 6th, the case was sent to a referee to take testimony, and report. On the 3d day of September a hearing was had before the court upon the report of the referee, and other testimony, and on the same day judgment was rendered dissolving the marriage between the parties, and awarding the custody of the three minor children, offspring of the marriage, to the plaintiff.

Subsequently, and on the 11th day of September, and 28th day of October, plaintiff wrote to defendant with apparent kindness, but made no allusion whatever to the divorce, or the disposition of the children.

We have endeavored to state the facts and evidence material to the subject under consideration, with more fullness than was perhaps necessary, out of a desire to do justice to all parties to this unfortunate state of affairs. In proceedings for

divorce, it is not alone the plaintiff and defendant and their minor children who are interested.

The proper regulation and control of the marriage relation is of so much importance to society, the well being of the community is so far involved in the permanence of this relation, that the state, through its courts, exercises a peculiar guardianship over marriage and divorce. Society, as represented by the state, has an interest in maintaining the rules, which have been prescribed by the proper authority, concerning marriages and divorces, which interest it is the duty of the courts to protect.

A divorce is not to be granted simply because the parties are willing that it should be, nor because the defendant makes default, or neglects to assert, or waives a defence.

In proceedings of this kind, any course of action upon the part of a plaintiff, which is designed, and tends, and operates, to deprive, or exclude a defendant from setting up and establishing a defence, which, if established, would prevent the granting of the divorce, is a fraud upon the administration of justice, as well as a fraud upon the defendant.

We are of opinion that the conduct of the plaintiff in this case amounts to fraud upon the state, as represented by the court, and upon the defendant.

The state had in these proceedings the right to which we have already referred.

The defendant had the right to appear and defend.

Now, we do not propose to enter upon a long discussion, for the purpose of showing the practical effect of the course taken by the plaintiff in this case.

No comment upon the facts which we have recapitulated, will be required to satisfy the professional reader, that the defendant was practically deprived of the privilege and right of making a defence in this action.

Young v. Young.

She is a woman, and, so far as can be judged from her correspondence, of very ordinary intelligence; her knowledge of legal proceedings, and of the law of divorce, is presumably very limited; she is served with process as she is on her way out of the state, and is admonished by her husband to keep silent; she is immediately sent away to a distant place, out of the state, and out of the United States, and among strangers; her place of abode is concealed from her parents and acquaintances; her husband writes frequent letters to her expressing feelings, and holding out prospects, calculated to lull her suspicions, if any she had; the proceedings for divorce are all the while going on, though it does not appear that any allusion is made to them in plaintiff's letters, and notwithstanding, as we have already remarked, she appears to have been aware of the institution of these proceedings, and that a divorce was to be expected, she swears (and in addition to the natural probabilities of the case, her letters, written to defendant during her stay at Tilsonburgh, and produced by him, to some extent, appear to support her affidavit) that she was ignorant of her rights, and was misled by the plaintiff, and that if she had not been, she would have taken steps to protect her rights by interposing a defence to the action.    To all this it is important to add, that notwithstanding her adultery, she appears to have been in a remarkable degree under the control of her husband; subjecting her will to his; reposing an almost blind confidence in his judgment, and yielding readily to his wishes and commands.

These facts of course furnish no justification for her confessed adultery, but we think them proper to be taken into account, in reference to her present application.

The defence which she sets up under-oath, is, that the adultery for which the divorce was decreed, was brought about by

the connivance of the plaintiff, and that it was subsequently condoned.

We shall not inquire whether this defence is true or false. That is a question to be tried in the usual way, and by a jury, if desired, and not upon affidavits. We intimate no opinion whatever in regard to it.

But for the reasons above given, we are of opinion that her application to have the judgment opened, to be permitted to answer, and that the case should stand for trial as if no judgment had been entered therein, should have been granted, and the order denying such application is accordingly reversed.