## CHARLES A. IKENBERRY v. NEW YORK LIFE INSURANCE COMPANY.[1]

October 30, 1914.

Nos. 18,702—(29).

**Life insurance — payment of first premium.**

1. The evidence examined and *held* to make the payment of the first premium on a life insurance policy and its delivery to and receipt by the insured questions of fact for the jury.

**Evidence of litigant's conduct.**

2. While the conduct of a person, subsequent to an alleged transaction, may be used against him to disprove the position he takes in a litigation involving the same transaction, it may not be offered to corroborate or prove the correctness of such position.

**Admission against interest — evidence inadmissible.**

3. When it appeared that a purported sender of a telegram was in a state of coma from a paralytic stroke so that it was impossible for her to

[1] Reported in 149 N. W. 292.

have caused or directed a message to be sent, the telegram is properly ex-·cluded when offered as an admission against interest.

**Same — evidence of collateral matters.**

4. In the reception in evidence of acts or conduct in collateral matters tending to prove admissions against interest upon an issue in litigation, the trial court must exercise discretion and consider whether, in view of surrounding circumstances, the matter offered is likely to aid the jury. No abuse of such discretion is found in the ruling excluding the will of plaintiff's testate in which no mention is made of this insurance payable to her estate.

**Conversations with decedent — agent not interested party.**

5. The agent of defendant, who negotiated the insurance, to whom the insured made and delivered a note for the amount of the first premium, and to whom the defendant sent the policy after its issue, is *held* not interested in the event of the action so as to prevent his testifying to conversations with the insured, now deceased.

Action in the district court for Hennepin county by the administrator with the will annexed of the estate of Mary Elizabeth Cooke, deceased, to recover $5,000 upon defendant's policy upon the life of his testate. The case was tried before Booth, J., who at the close of the testimony denied defendant's motion to dismiss the action and its motion for a directed verdict, and a jury which returned a verdict in favor of plaintiff for $5,645.83. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed as to motion for judgment. Reversed as to motion for new trial.

*James H. McIntosh* and *Brown & Guesmer,* for appellant.
*M. H. Boutelle* and *N. H. Chase,* for respondent.

HOLT, J.

The defendant appeals from an order denying it judgment notwithstanding, and also denying a new trial, a verdict having been awarded plaintiff upon a policy of insurance alleged to have been issued by defendant upon the life of plaintiff's testate payable to her estate.

The contention is that no contract of insurance was ever consummated. At the solicitation of E. T. Harris, the agent of defendant,

plaintiff's testate, Mary E. Cooke, on March 11, 1911, applied for an insurance policy on her life in the defendant company. She gave a note for the amount of the first premium, due in six months and payable to the order of the agent. The defendant accepted the application, at least subject to the correction of an answer in the written application, made out and sent the policy to the agent. It never came into the manual possession of Mrs. Cooke. As supporting the defense that no insurance was ever effected, the defendant claims that there was ambiguity in the application as to the kind of policy she desired, and that her signature to a correction thereof was necessary before the policy could be delivered; also that, because she was unable to pay her note before due, as was contemplated in her arrangement with the agent, the policy was to be returned and another of later date substituted. Mrs. Cooke suffered a paralytic stroke on August 19, 1911, and was taken to a hospital, where she died on the twentieth of the following month. The application signed by Mary E. Cooke contained this provision: "I agree as follows: 1. That the insurance hereby applied for shall not take effect unless the first premium is paid and the policy delivered to and received by me during my lifetime." It would serve no useful purpose to set out or analyze the testimony touching the issue of the acceptance of Mrs. Cooke's note as payment of the first premium, nor the one whether the mailing of the policy by defendant to its agent was a delivery to and receipt thereof by Mrs. Cooke under the terms of the application. Under section 3607, G. S. 1913, Harris must be "held to be the company's agent for the purpose of collecting or securing the premiums" on the policy, whatever the stipulations might be in the contract of insurance or, for that matter, in the agent's contract of employment with defendant. By written admissions of Harris, while attempting to obtain advance payments on the note, the policy was considered to have taken effect; this, of course, implies both payment of the first premium, so far as defendant is concerned, and the delivery of the policy by it. Suffice to say that an attentive examination of the evidence convinces us that both the payment of the first premium and the delivery of the policy, the two decisive propositions which determined whether the policy was in effect, were not for the court, but

were rightly and under clear and accurate instructions submitted to the jury.   Defendant is not entitled to judgment notwithstanding the verdict.

We have examined the numerous assignments of error urged as grounds for a new trial, but find none meriting notice except the ones now to be considered relating to rulings on the offer of evidence. An inquiry as to the efforts of Harris to ascertain whether Mrs. Cooke's note for the first premium was bankable was properly excluded, if for no other reason than this, that at the time no evidence had been received as to any conditions under which the note was accepted as payment of the first premium.   Nor was error made in excluding the proof of the absence of attempts on the part of Harris to negotiate or collect the alleged collateral note of $1,000 given him subsequent to March 11, 1911, by Mrs. Cooke, for that note was not due until some time in 1912.   But, apart from these reasons, there was no error, for while the conduct of a person subsequent to an alleged transaction may be used as an admission against him, he should seldom, if ever, be permitted to offer testimony of that kind to support the position he maintains in the litigation.   Such evidence comes too close to self-serving declarations.   It cannot be used even in rebuttal of admissions against interest by word or act.   "An admission by a party against his interest, at one time, cannot be rebutted by proof of a statement made in his own favor at another time." Marvin v. Dutcher, 26 Minn. 391, 4 N. W. 685.

A telegram received by Harris purporting to have been sent by Mary E. Cooke, we think, was rightly excluded, for it appeared clearly that Mrs. Cooke could not have sent it, or caused it to be sent.   For more than three days previous to that time Mrs. Cooke had been in a state of coma from the stroke and continued in that condition during several days thereafter.   For the same reason a letter written, during this time, to defendant by attorneys employed by Mrs. Cooke's daughter or son-in-law without her knowledge, or ability to know, could not bind her or her estate, and was properly rejected.

Some few days before death Mrs. Cooke recovered sufficiently to make a will by which she disposed of, apparently, all her possessions. Therein the property and legatees were described with some par-

ticularity, but without any reference to this insurance. The will was offered as tending to prove that Mrs. Cooke did not deem the insurance in existence. It was excluded. While the subsequent acts indicative of her understanding that the policy was not in force are admissible as admissions against interest, we would be loath to hold the exclusion of this will prejudicial error. The trial court exercises some discretion as to the extent to which the conduct of a party litigant subsequent to the making of an alleged contract may be inquired into, for the purpose of proving or disproving its existence. In so doing the court must also give consideration to the probability of the particular act, sought to be shown, furnishing a legitimate aid to the jury. In view of the illness of Mrs. Cooke and the surrounding circumstances, we are not prepared to say that the court exceeded a wise discretion in the matter of the exclusion of the will. And this applies also to rulings in respect to what Mrs. Cooke, Harris, and certain officers of defendant did subsequent to March 11, 1911, with reference to other collateral matters as throwing light upon the main issue—was the policy in force?

We have, however, concluded that the learned trial court was in error when ruling that section 8378, G. S. 1913, prohibited E. T. Harris from testifying as to conversations or admissions of Mrs. Cooke. The statute is: "It shall not be competent for any party to an action, or any person interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties, unless" etc. The disability of a person to testify in a case because of interest which existed at common law has been removed by statute, save in certain instances, one of which is found in the provision quoted. The uniform holding ever since Chadwick v. Cornish, 26 Minn. 28, 1 N. W. 55, has been that the provision is in the nature of an exception to the general rule of receiving all available testimony and should be construed strictly. Keigher v. City of St. Paul, 73 Minn. 21, 75 N. W. 732. Finn v. Modern Brotherhood of America, 118 Minn. 307, 136 N. W. 850. Harris was not a party. Was he interested in the event of the litigation so as to be disqualified? It has been held that the interest here referred to must be such "that [the

witness] has something to gain or lose by the direct legal operation and effect of the judgment to be rendered therein, or that the record thereof can be used for or against him, as evidence" upon the fact in issue in some other action. Marvin v. Dutcher, 26 Minn. 391, 4 N. W. 685. The party must make the incompetency appear clearly. Perine v. Grand Lodge A. O. U. W. 48 Minn. 82, 50 N. W. 1022. Harris had no pecuniary, legal, certain or immediate interest in the event of the cause of action itself such as must exist under the decisions last cited. He would not gain or lose by direct legal effect of the judgment herein. There is no way of ascertaining whether or not the jury found that defendant, by its course of conduct, impliedly authorized Harris to accept notes in payment of premiums. His interest in the event is not certain but contingent. A contingent or remote interest in the result or event of the action does not bring a witness within the provision of the statutory prohibition. It has been held that a wife's interest in her husband's real estate (exclusive of the homestead) is not such an interest as will debar her from testifying to a conversation with a deceased person, where such conversation involves an issue of the title of such real estate. Madson v. Madson, 69 Minn. 37, 71 N. W. 824. An agent who transacted the business for the survivor of two contracting parties is not precluded from testifying to the conversations in regard thereto with the deceased party, where such business becomes an issue in litigation. Darwin v. Keigher, 45 Minn. 64, 47 N. W. 314. And yet it is apparent that an agent is nearly always interested in the event of a lawsuit, where the issue between two contracting parties may depend on the agent's acts or authority, for, if it be established therein that he exceeded his authority, the result may be that no contract was effectuated or, if one was made, that the agent is liable over for the damages suffered by the principal because thereof. But nevertheless such interest in the event is contingent or remote. It is not rendered certain by the judgment in an action to which the agent is not a party. It is also worthy of consideration that, if the liability over of an agent to his principal, or a servant to his master, should be held a disqualifying interest under the statute, the number of instances will be unduly increased, in which it

will be possible to prevent the actual facts from being developed in a lawsuit. In O'Toole v. Faulkner, 34 Wash. 371, 75 Pac. 975, brought against a street railway to recover for the death of plaintiff's intestate caused by the motorneer's negligence in the operation of the defendant's street car, it was held that the motorneer's liability over was not such an interest in the event as would render his testimony of conversations with the deceased after the injury inadmissible under a statute similar to ours.

Plaintiff relies upon Williams v. Empire Mut. Annuity & Life Ins. Co. 8 Ga. App. 303, a parallel case to the one at bar as to the facts, to sustain the exclusion of Harris' testimony as to the conversations with Mrs. Cooke. But the statute of Georgia is not the same as ours. It reads (Subds. 4, 5 of section 5269, Code 1895) : "Where a person not a party, but a person interested in the result of the suit, is offered as a witness, he shall not be competent to testify, if as a party to the cause he would for any cause be incompetent. No agent or attorney-at-law of the surviving or sane party at the time of the transaction testified about, shall be allowed to testify in favor of a surviving or sane party, under circumstances where the principal, a party to the cause could not testify." The case of Whitlow's Adm'r v. Whitlow's Adm'r, 109 Ky. 573, 60 S. W. 182, also cited by plaintiff, comes under a statute essentially different from ours; it provides that "no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done, or omitted to be done by, one who is * * * dead when the testimony is offered to be given." The case in our court which is nearest to holding that Harris had such an interest in the event of the litigation that he was incompetent to testify to the conversation with Mrs. Cooke is Beard v. First Nat. Bank of Minneapolis, 39 Minn. 546, 40 N. W. 842, a suit upon a certificate of deposit issued by defendant to plaintiff's intestate, where the defendant called a son of the deceased to prove a *donatio mortis causa* of the certificate to him, but he was held interested in the result, having indorsed the certificate and received the money upon it, and therefore liable to the bank if his title was not good. However we observe that he was directly and pecuniarily interested in the validity of

the title claimed by him in the instrument involved in the action. A similar direct pecuniary interest seems to have rendered the witness incompetent in Kells v. Webster, 71 Minn. 276, 73 N. W. 962.

But it is contended that Harris may be prejudiced by the use of the record for or against him. It is true that if hereafter, in an action by or against Harris, it becomes necessary to prove the existence of the judgment in this action it may be done by the mere introduction of the record. But such use thereof may be made against all the world. We think the true test is stated in Feitl v. Chicago City Ry. Co. 211 Ill. 279, 71 N. E. 991, where the proposition is fully and clearly discussed, namely: Can the record be used against him to prove the truth of the facts upon which the judgment was founded? 40 Cyc. 2280, 2281. A moment's reflection will disclose that the judgment in this case cannot be used to prove or disprove any fact which may render Harris liable over to defendant or any one else. Its introduction will not tend to prove that the note of Mrs. Cooke was taken in payment of the premium or that Harris exceeded his authority or that he, for any reason, should be held liable to the insurance company. It could only be introduced to prove the fact that a judgment was upon a certain date entered for a certain amount in favor of one and against the other of the parties litigant. We hold that Harris was not disqualified by reason of interest in the event of this action, nor because the record of the judgment herein can be used for or against him as evidence of any of the facts in issue, in this litigation, in some other proceeding based on the same issues.

For the error pointed out a retrial must be had. The order appealed from is affirmed insofar as it denied judgment notwithstanding and is reversed insofar as it denied a new trial.