[Civ. No. 131.  Fourth Appellate District.—August 4, 1930.]

. C. H. JOHNSTON, Respondent, v. FRED KEARNS, Appellant.

Don C. Bitler for Appellant.

Hickcox, Trude & Johnson for Respondent.

BARNARD, J.—This action was submitted to the court upon stipulated facts which may be briefly summarized as follows: Liberardo A. Vasquez was an employee of the Southern Sierras Power Company at El Centro, California. As such employee and in connection with certain group insurance, he held two certificates of insurance on his life, one for one thousand dollars and the other for five hundred dollars. These certificates named Fred Kearns, the substituted defendant herein, as beneficiary. Vasquez died about noon on March 31, 1928, at El Centro. At the time of his death the records of the insurance company showed the said Kearns as beneficiary under each of said certificates. The policies contained the following provisions in reference to beneficiaries:

"The Beneficiary shall be the person or persons designated on the Society's records in accordance with the employee's election."

"Any employee insured hereunder may from time to time during the continuance of this policy change the beneficiary by a written request, upon the Society's blank, filed at its Home Office, but such change shall take effect only

upon the receipt of the request for change at the Home Office of the Society.''

''Beneficiary Fred Kearns subject to the right of the employee to change the beneficiary in accordance with the policy provisions.''

During the forenoon of March 31, 1928, the said Vasquez executed the following instruments:

''El Centro, California,
''March 31st, 1928.

''The Equitable Life Assurance Society, New York, N. Y.

''Gentlemen: Please change the name of the beneficiary in my policy or policies with your Company to C. H. Johnston, a friend, residing at 381 Holt, El Centro, Calif.

''Very truly yours,
''L. A. VASQUEZ.

''Witness:
''G. E. MILLBURN.
''MARK M. MUNSON.''

''El Centro, California,
''March 31st, 1928.

''To C. H. Johnston:

''In consideration of our friendship and the help you have given me, I have named you beneficiary of my life insurance policies.

''Please pay my funeral expenses and any debts accruing from my last illness and any other debts as far as possible. The remainder you may retain with my best love and wishes.

''L. A. VASQUEZ.

''Witness:
''G. E. MILLBURN.
''MARK M. MUNSON.''

He delivered the first of said instruments to the manager of the Southern Sierras Power Company for mailing to the insurance company and the said manager caused the same to be forthwith mailed to the insurance company at New York City, where it was received by the company in due course. However, the said manager knew of the death of Vasquez before the letter was mailed. It was further stipulated as follows:

''That it was beyond the power of the said Liberardo A. Vasquez to literally comply with the terms of the insur-

ance policies and certificates as to the change of beneficiary at the time that he made such purported change, as he was confined to his bed, and he died the same day that the said instruments hereinbefore in this paragraph set out were executed.''

After this suit was brought the insurance company paid the amount of the certificates into court, to abide the result of the action, and Kearns was substituted as defendant. From a judgment in favor of the plaintiff, Kearns has appealed.

█ The sole question on this appeal is whether the insured, in attempting to change his beneficiary, accomplished his purpose. It may be said here, as the court said in *White* v. *White,* 194 N. Y. Supp. 114:

''The main contention here is that the insured did not comply with the regulations of the contract as to change of beneficiary, and that therefore the attempted transfer was void, and that the defendant did not acquire any right, title, or interest by this so-called redesignation. Many cases bearing on the question here involved are cited, and from an examination of them it will appear that, while a change of beneficiaries must be made under certain formalities for the protection of the insurer, yet, in cases where the company has waived defending by interpleading, and has paid the money into court, and has no further interest in the litigation between the parties, a far more liberal rule obtains, and that courts of equity seek to do that which the insured apparently intended to have done, and to award the fund to that claimant who had the strongest claim therefor under the existing conditions.''

To the same effect the court said in *Adams* v. *Grand Lodge A. O. U. W.,* 105 Cal. 321 [45 Am. St. Rep. 45, 38 Pac. 914, 915]:

''The Ancient Order of United Workmen is not an active party to the litigation. It has no interest whatsoever in the result. In effect it has paid the fund into the hands of the court, and is now a stranger to the action. We then have a certain fund of money to which the plaintiff and the intervener both claim title, and their respective claims of ownership are to be litigated in the same way, and finally adjudicated and determined upon the same general principles, as though the common source of title

of this money came through a bequest or gift rather than from a mutual benefit association.''

The rules applying to the question now under consideration are the same whether the insurance company involved is a fraternal society or what is usually called an "old line company." (*New York Life Ins. Co.* v. *Rose*, 70 Cal. App. 175 [233 Pac. 343].) In *Jory* v. *Supreme Council A. L. of H.*, 105 Cal. 20 [45 Am. St. Rep. 17, 26 L. R. A. 733, 38 Pac. 524, 525], the court said:

"If the Legion of Honor was here as an aggressive party, insisting as against the claims of the son upon a strict compliance with its by-laws before it could be compelled to take money from its treasury, possibly a different question would be presented; but, as between these parties litigant, the court will administer justice from the standpoint of equity, and bring to the solution of this question those broad principles upon the basis of which equity always deals. The general rule unquestionably is that a change of a beneficiary cannot be made by the insured unless a substantial compliance with the laws and regulations of the society is had; yet courts of equity have recognized various exceptions to this general principle, and the facts of this case bring it squarely within one of the well-recognized exceptions. This exception is builded upon the principle that equity does not demand impossible things, and will consider that done which ought to have been done; and is embraced within the proposition that when the insured complies with all the requirements of the rules for the purpose of making the substitution of beneficiaries, with which he has the power to comply, he has done all that a court of equity demands.''

In the case of *Supreme Lodge* v. *Price*, 27 Cal. App. 607 [150 Pac. 803, 808], while the court holds that a change in beneficiaries can only be affected by a substantially strict compliance with the requirements of the policy, and that the beneficiary acquires a vested right to the insurance money upon the death of the insured, if no change in beneficiaries has been made, the court sets forth three well-established exceptions to the rule of strict compliance, as follows: 1. If the company has waived strict compliance by issuing a new certificate, the original beneficiary will not be heard to complain that the rules were not followed.

2. If it is beyond the power of the insured to comply literally with the requirements for changing the beneficiary, a court of equity will treat the change as having been made. 3. If the insured has pursued the course provided in the policy and has done all that lies in his power to change the beneficiary, but dies before a new certificate is issued, a court of equity will treat such certificate as having been issued. While in that particular case the court held that the insured had not done all within her power to effect the change, and in fact had taken none of the steps required, the court makes the following significant observation:

" . . . if it appeared that the deceased had, prior to her death, done all that lay within her power, under the circumstances by which she was beset, to accomplish the desired change, then, . . . the aid of a court of equity could undoubtedly be successfully availed of to enforce the writing and her intention as expressed therein sustained by the application of the equitable doctrine invoked by the respondents."

In the same case, the court also approved the following quotation from *Rollins* v. *McHatton,* 16 Colo. 203 [25 Am. St. Rep. 260, 27 Pac. 254] : " 'While equity may aid an attempted but incompleted change in that respect, it does so only when the assured has done his part towards perfecting the substitution in accordance with the method prescribed, but owing to circumstances over which he has no control the change is not entirely consummated at the time of his death. . . . But it is an essential prerequisite to the interposition of equity that the assured has in good faith attempted to comply with the prescribed mode of substitution.' " In *Barboza* v. *Conselho, etc.,* 43 Cal. App. 775 [185 Pac. 1028], the general rule, that where an insured does all in his power to comply with the requirements for a change of beneficiary, his intentions will be carried out, is approved. In the case of *New York Life Ins. Co.* v. *Rose, supra,* the insured signed a written request for a change of beneficiary and mailed this to the insurance company, together with an affidavit showing his inability to send in the policy because of an uncle's refusal to return the same. These documents were received by the company after the death of the insured, but the change of beneficiary was not indorsed on the face of the policy, as required by

its provisions, because of the absence of the policy. It was held that the insured had done all within his power to change the beneficiary. In *Mutual Life Ins. Co.* v. *Lowther,* 22 Colo. App. 622 [126 Pac. 882], a written request for a change in beneficiary was mailed by the insured two days before and was received by the company two days after his death. This was held sufficient to change the beneficiary.

In the last-named case the court said:

"The clause in the policy, 'such change shall take effect upon the indorsement of the same on the policy by the company,' in view of the entire paragraph in which it is found, does not suggest to our mind a condition precedent to the consummation of the change of beneficiary, but rather a provision for protection against such possible oral or other changes by the insured of which the company has not received notice. In such case this clause would protect the company against liability as between contesting beneficiaries for the fund. The first change received and indorsed by it would be upheld, and the record thus made would likewise protect the true beneficiary and give effect to the insured's wishes. The receipt of the notice and policy by the company two days after insured's death, of which it had no knowledge, did not relieve it of the ministerial duty imposed by the terms of the contract of filing and indorsing the same."

This language is in accord with our views upon the effect of a similar clause in the policies here in question, which reads: "Such change shall take effect only upon the receipt of the request for change at the Home Office of the Society."

The appellant cites a number of cases in support of his contention that the rights of these parties were fixed by the records of the insurance company as they existed at the moment of the death of the insured. Most of these are cases where the contest was between the insurance company itself and the beneficiary, and where the issues were determined upon the contract itself, or are instances where the insured has failed to do all within his power to make the change desired. It seems to be well settled that the right of a named beneficiary to the proceeds of a life insurance policy vests at the death of the insured only if no change in beneficiary has been made, and that the latter depends, not

merely upon the records in the office of the company at the moment of the death of the insured, but also upon what steps have been taken by the insured prior to his death. The only new question here presented arises from the fact that the request for change of beneficiary was not actually mailed prior to the death of the deceased, although the insured upon his deathbed handed it to his employer for the purpose of mailing. If the insured had himself mailed the letter, and thereafter died before it reached the office of the company, under the terms of the contract and the authorities, it would be held that the beneficiary had been changed. We do not think the result should be any different in the case at bar. Prior decisions have, in effect, held that the right of an insured to change his beneficiary does not depend upon how far he may happen to live from the home office of the company. We think also such a right does not depend upon when the next mail train happens to leave that particular locality. The right depends upon the acts of the insured himself, as measured by equitable rules.

In cases where, under the terms of the policy, a change of beneficiary must be indorsed upon the policy by the company, or a new certificate issued, it is held that these acts are ministerial in nature, and need not be done before the death of the insured. It will, however, be noted that in the instant case, no act of any kind on the part of the insurance company was called for under the terms of this policy. Neither a new certificate, nor even an indorsement was required. The only provision is that the written request shall be received at the home office of the company. Since the insured had complied with every requirement of the policy in so far as he was able, and especially since nothing remained to be done by the company, under the established rules, his expressed intention should prevail.

The judgment is affirmed.

Cary, P. J., and Marks, J., concurred.