# VERNA A. BOEHNE v. GUARDIAN LIFE INSURANCE COMPANY OF AMERICA AND OTHERS. CARL J. LINDAHL AND OTHERS, APPELLANTS.[1]

May 29, 1947.

No. 34,258.

---

[1]Reported in 28 N. W. (2d) 54.

60

*Ben R. Toensing,* for appellants.
*Eugene A. Rerat* and *R. F. Merriam,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for reformation of a life insurance policy upon the life of Alvin C. Lindahl, who met accidental death September 20, 1944, and to recover the proceeds of such policy. Plaintiff, who was the intended wife of insured, alleges that prior to his death he had effected a change of beneficiary whereby she became the beneficiary entitled to the proceeds of such policy upon his death.

Defendants Carl J. Lindahl and Mathilda Lindahl, his wife, parents of insured, originally were designated beneficiaries in the policy and on the face thereof were still so designated at the time of insured's death. In their joint answer they deny that a change of beneficiary had been effected prior to insured's death, and they claim the proceeds of the policy.

Defendant Guardian Life Insurance Company of America, the insurer, answered, admitting liability for the amount of the policy, but declining otherwise to enter into the controversy. It asked leave to pay the proceeds into court pending determination of this litigation. Pursuant to stipulation, the court made its order directing the company to deposit in escrow the amount of the policy with the Marquette National Bank of Minneapolis to abide the court's determination herein. This was done, and the action was dismissed as to the company.

For convenience, the word "defendants" will be understood to refer to defendants Carl J. Lindahl and Mathilda Lindahl, and defendant Guardian Life Insurance Company of America will be referred to as the "company."

At the trial a jury was called at defendants' request. At the close of the testimony the court submitted to it for determination the following questions:

"1. Did the insured, Alvin C. Lindahl, deceased, intend to change the beneficiary in his policy of insurance with the Guardian Life Insurance Company, No. 777144, so as to name the plaintiff beneficiary in said policy?

"2. Did the insured, Alvin C. Lindahl, deceased, do substantially all he could to change beneficiaries in said policy No. 777144 from his parents to the plaintiff, his intended wife, before his death?"

The jury answered both questions in the affirmative. The trial court thereupon made findings and ordered judgment for plaintiff. From its subsequent order denying defendants' motion for amended findings or a new trial, this appeal is taken.

The facts with reference to the policy and the change of beneficiaries therein are as follows: On July 8, 1942, the company made and delivered to Alvin C. Lindahl its policy No. 777144 insuring his life for $5,000. The policy contained provision for payment of an additional $5,000 in case of death by accident and provided that insured might change beneficiaries therein at any time without consent of the original beneficiaries or the company. The beneficiaries first named were Carl J. Lindahl and Mathilda Lindahl, his wife, parents of insured. An additional $5,000 policy with identical provisions, also naming the parents of insured as beneficiaries, was taken out by insured at the same time. No claim is made that insured changed the beneficiaries in this second policy. The proceeds thereof have been paid to his parents, and the policy is not in litigation here.

The first policy, No. 777144, here involved, contained the following provision with reference to change of beneficiaries:

"If the right to change the beneficiary has been reserved, the Insured may change and successively change the beneficiary hereunder, whether original or substituted, without the consent of such beneficiary; * * *. *Every change of beneficiary * * * must be made by written notice to the Company at its Home Office, accompanied by the policy, and shall take effect only when endorsed on this policy by the Company, * * *.*"

During all the times involved, Remole & Remole, a copartnership with offices in the Foshay Tower in Minneapolis, were general agents of the company. In their Minneapolis office at such times Reuben S. Remole was employed as an agent and solicitor. The terms of his employment were covered in part by written agreement between the company, the general agents, and himself. He solicited and wrote the above-described policies and subsequently assisted insured in executing a change-of-beneficiary form on policy No. 777144, now in controversy here.

In addition to his duties as solicitor, Remole had been trained and instructed by the company to furnish services to the Minneapolis policyholders, in particular on policies originally written by him. Such services included assistance to them in changing beneficiaries, in withdrawing dividends, in making loans, in paying premiums, and other similar matters. Pursuant thereto, a definite mode of procedure was followed to effect a change of beneficiaries. Printed "Notice to Change Beneficiary" forms were furnished the Minneapolis office by the company. A policyholder desiring to effect such a change upon calling at the office was referred to the agent writing his policy, who determined the requirements of such policyholder. The company's cashier, who was also in the Minneapolis office, was then advised thereof by the agent, and thereupon the cashier filled in the printed form, procured the execution thereof by the policyholder in the presence of a witness, and forwarded the form, together with the policy, to the company's home office in New York for endorsement, with instructions to return the same to the insured thereafter.

The cashier was Miss Mary H. Gorman, later Mrs. Mary G. Manke. She was employed by the company, as distinguished from the general agents, under a written contract. Her employment was independent of the general agents, although she had an office with them in the Foshay Tower. Her salary was paid by the company, and she received her training and instructions from it. As above indicated, she was also required by the company to assist policyholders in changing beneficiaries, preparing the printed forms therefor, assisting in procuring the execution thereof, and forwarding the same, together with the policy, to the home office. She was instructed to work with the agent or solicitor writing the original policy in furnishing such services.

At the time the described policies were written insured was married. In September 1940, he had separated from his wife and contemplated obtaining a divorce. In May 1942, an action therefor was commenced, and a decree therein was entered on September 13, 1944. Insured had known plaintiff for some ten years prior to 1940. While his divorce action was pending, he entered into an understanding with her that immediately following his divorce they were to be married.

On November 24, 1942, insured called upon the general agents at their office in the Foshay Tower and conferred with Reuben S. Remole and Mary G. Manke with reference to changing the beneficiaries in the policy here in litigation. He then first stated to Remole:

"Reuben, I want to change one of my $5,000 policies over to Verna, * * * and I want to leave the other $5,000 payable to my parents, and I would like to sign that beneficiary change today, but I would not like it to go on your company records as yet because I am in the course of securing a divorce from my wife and if it came to her ears I am afraid it might jeopardize my divorce proceedings, so I would rather you held this beneficiary change in your office until my divorce has been consummated, but in the event anything would happen to me I wish this one policy be turned over to Verna Boehne and the other policy be turned over to my folks. * * * The minute

I get my divorce I intend to marry Verna, and I want her to have this part of the insurance."

Thereafter he and Remole went into the office of Mrs. Manke, the cashier, where he repeated to her the foregoing instructions. She thereupon filled in a "Notice to Change Beneficiary" form designating plaintiff as beneficiary therein. Insured then signed it, and Remole signed as a witness thereto. The policy was left in the office of the cashier. Receipt was given therefor on a form submitted by the company, as follows:

"THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA
"NEW YORK CITY

"Agency at Mpls. Minn. 11/24, 1942

"RECEIVED FROM Mr. Alvin C. Lindahl residing at Mpls. Minn. Policy No. 777144, issued on the life of Alvin Lindahl to be forwarded to the Home Office of The Guardian Life Insurance Company of America at 50 Union Square, New York City, for [written in] *Keep in Our Possession Unless Claimed By Verna A. Boehne.*

"This receipt does not in any way commit The Guardian Life Insurance Company of America to any action in connection with said policy. * * *

"M. GORMAN, Cashier."

The date on the change-of-beneficiary form was not then filled in, insured stating to the cashier that he would advise her when his divorce became final, at which time she might insert the date and forward the form and policy to have the change recorded at the company's home office.

On September 13, 1944, a decree of divorce was entered in the divorce proceedings. On September 18, 1944, insured was advised thereof by his counsel. On September 19, 1944, from the office of his counsel he telephoned the company office in Minneapolis and informed Reuben S. Remole as follows:

"* * * I received my final papers in my divorce decree and Verna and I are getting married and I want you to send in that beneficiary

change to your home office *at once,* and I also want to change my other $5,000 policy over to Verna also." (Italics supplied.)

Remole advised him that the second policy, which also had been left in the company's office, could not be changed until the form therefor had been signed by him. He then instructed Remole to prepare the form and stated that he would be in soon to sign it. Remole immediately advised the cashier that insured had telephoned, and Remole instructed her to forward policy No. 777144, together with the change-of-beneficiary form previously executed by him, to the home office for endorsement. He also advised her that insured would be in sometime during the day to execute a change-of-beneficiary form for the second policy. The cashier thereupon inserted the date September 19, 1944, in the change-of-beneficiary form previously executed by insured. Contrary to insured's instructions, however, neither the form nor the policy was forwarded that day, in the belief that insured would be in to execute the second form and that both policies and forms might then be mailed together. At 2 a. m. on September 20, 1944, insured met death by accident on a motor trip. The change-of-beneficiary form previously executed by him and the policy which it covered were mailed by the cashier to the company's home office that day, and presumably arrived there a day or so later, subsequent to insured's death. The change of beneficiary in consequence was not endorsed upon the policy by the company.

On appeal, the questions to be determined are:

(1) Is the evidence sufficient to sustain a finding that prior to his death insured effectively changed the beneficiaries in the policy so as to name plaintiff such beneficiary instead of his parents?

(2) Did the trial court err in admitting in evidence certain conversations (a) between insured and Remole, the agent; (b) between insured and Mrs. Manke, cashier of the company; and (c) between insured and his counsel in the divorce proceedings?

(3) Did the trial court err in admitting the executed change of beneficiary form?

■ The policy provision above set forth, that "Every change of beneficiary * * * must be made by written notice to the company at its home office, accompanied by the policy, and shall take effect only when endorsed on this policy by the company," is common to many old-line insurance policies. By the great weight of authority, a change of beneficiary thereunder can be accomplished without a strict or complete compliance therewith, where the policy reserves the right to the insured to change the beneficiary without other restrictions. Wentworth v. Equitable L. Assur. Society (1925) 65 Utah 581, 238 P. 648; Atkinson v. Metropolitan L. Ins. Co. (1926) 114 Ohio St. 109, 150 N. E. 748; La Borde v. Farmers State Bank (1927) 116 Neb. 33, 215 N. W. 559; Hoskins v. Hoskins (1929) 231 Ky. 5, 20 S. W. (2d) 1029; Stewart v. Stewart (1930) 90 Ind. App. 620, 169 N. E. 593; Re Chatham Phenix Nat. B. & T. Co. (1931) 232 App. Div. 598, 251 N. Y. S. 43.

■ The cases holding this viewpoint for the most part do so on the ground that such a condition in a policy is for the protection of the insurer and may be waived by the latter by its payment of the proceeds of the policy into court and indicating that it stands indifferent as between rival claimants therefor, or by its otherwise expressing assent to a change which has not been completed strictly according to such conditions. Royal Union Mut. L. Ins. Co. v. Lloyd (8 Cir.) (1918) 165 C. C. A. 627, 254 F. 407; Quist v. Western & Southern L. Ins. Co. (1922) 219 Mich. 406, 189 N. W. 49; White v. White (1922) 194 N. Y. S. 114; Estate of Sanes (1927) 91 Pa. Super. 466.

■ There is also authority for the viewpoint that the receipt of the notice and policy and endorsement of change of beneficiary thereon by the insurer involve purely ministerial acts, which the latter cannot refuse to perform after the death of the insured if, prior thereto, insured has done everything reasonably within his power to effect the designated change of beneficiary. Johnston v. Kearns, 107 Cal. App. 557, 290 P. 640; Reliance L. Ins. Co. v. Bennington, 142 Md. 390, 121 A. 369; Re Estate of Lynch, 135 Misc. 436, 237 N. Y. S. 663.

■ The reasons underlying the foregoing principles are well expressed in Sun Life Assur. Co. v. Williams, 284 Ill. App. 222, 226, 1 N. E. (2d) 247, 248, as follows:

"* * * The designation of a beneficiary in the first instance is left to the exclusive wish of the insured; the insuring company is not concerned, except to be informed of the name of the beneficiary; where the right to redesignate the beneficiary is reserved in the policy the insuring company is no more concerned than in the first instance; the change is not conditioned upon the consent of the insurer; the change, so far as any beneficiary is concerned, is effected when the insured in due form makes the change; the indorsement by the insuring company merely registers the name of the new beneficiary.

"This construction of the provision disposes of any question of a vested interest in the first named beneficiary. When the beneficiary is redesignated by the insured all interest of the prior beneficiary is terminated.

"The written indorsement may be waived by the company, but the indorsement on the policy registers the intention of the company to recognize the new beneficiary, and where, as here, the company makes no defense as to liability, but by interpleader brings the money into court, it makes a further recognition of its duty to make the indorsement as requested by the insured."

In White v. White, 194 N. Y. S. 117, *supra,* this doctrine is stated as follows:

"The provision * * * is clearly placed in the contract by the insurer for the protection of the company itself, to avoid a multiplicity of claimants, and can be used by such insurer as a defense in an action at law to recover the amount of the policy; but such defense can be waived by the company insuring, as in this case, by its indorsing such new designation thereon, and further by its paying the money into court and refusing to defend. The neglect to make this indorsement is not available in an action brought by a beneficiary to nullify the act of the insured in making a redesignation of a new beneficiary."

■ Where the insured has an unrestricted right to make a change of beneficiary, it has frequently been held that 'if he has forwarded to the insurer the policy, together with his signed notice of change of beneficiary therein, but dies before their arrival at the home office of insurer, or before insurer can act thereon, he will be deemed to have substantially complied with policy provisions relative to change of beneficiary, and his notice thereof will be given full effect even though insurer's action thereon takes place subsequent to insured's death. Johnston v. Kearns, 107 Cal. App. 557, 290 P. 640; Mutual L. Ins. Co. v. Lowther, 22 Colo. App. 622, 126 P. 882.

■ In such cases, the actual forwarding of the notice and policy by insured is held to take effect immediately upon his placing in motion the machinery for transmitting them to insurer's home office, and their arrival there subsequent to insured's death does not alter the effect of his signed notice thus transmitted. Under this doctrine, various modes of transmittal selected by insured prior to his death have been held sufficient. These include: Deposit by insured or his agent of the notice and policy in the United States mail addressed to insurer's home office, Johnston v. Kearns, 107 Cal. App. 557, 290 P. 640, *supra;* Mutual L. Ins. Co. v. Lowther, 22 Colo. App. 622, 126 P. 882, *supra;* personal delivery by insured of the notice and policy to insurer's local agent, with instructions to forward same to the home office, Equitable L. Assur. Society v. Baumgardner (D. C.) 55 F. Supp. 985; insured's delivery thereof by mail or in person to a district agency office of the company, Equitable L. Assur. Society v. Brown (D. C.) 31 F. Supp. 785; and, where employer's group policies are involved, by delivery thereof to the office of such employer, Goodrich v. Equitable L. Assur. Society, 111 Neb. ,616, 197 N. W. 380. Some authorities go so far as to hold that even setting in motion the means of transmission of the notice and policy to the home office is not required to give effect to a notice signed by the insured prior to his death (Glen v. Aetna L. Ins. Co. 73 Ohio App. 452, 56 N. E. [2d] 951; Greenfield v. Massachusetts Mut. L. Ins. Co. 253 App. Div. 51, 1 N. Y. S. [2d] 52) ; while in Aetna L. Ins. Co. v. Carney, 169 Misc. 992, 9 N. Y. S. (2d) 59, the opinion is

rendered without reference to whether the notice was mailed by the insured prior to his death or by someone else subsequent thereto.

■ In determining the question presented, the courts have held that where the company has furnished an agent with blank change-of-beneficiary forms for the purpose of assisting policyholders in making changes of beneficiary, such agent acts for and represents the company rather than the insured with reference to any acts performed in relation thereto. See, generally, Pacific Mut. L. Ins. Co. v. Barton (5 Cir.) 50 F. (2d) 362; Stewart v. Union Mut. L. Ins. Co. 155 N. Y. 257, 49 N. E. 876, 42 L. R. A. 147; Koivisto v. Bankers & Merchants F. Ins. Co. 148 Minn. 255, 181 N. W. 580. Thus, in Equitable L. Assur. Society v. Baumgardner (D. C.) 55 F. Supp. 990, *supra,* where the insured left the notice of change and policy with a soliciting agent of the insurer, who had been furnished blank change-of-beneficiary forms by his company and who had not mailed the notice and policy until subsequent to the insured's death, the court stated:

"Apparently the service which Ward [the agent] rendered in the matter of filling out and forwarding the application for change of beneficiary was a service which the company rendered to its policy holders through its local agents, and the insured had a right to request such service, and to rely upon the fulfillment of the obligation which attached to it.

"*\* \* \* the delivery of the application and the policy to the company agent for the purpose of transmitting it to the company's home office placed it beyond the immediate control of the insured and into proper channels of transmission.* Therefore, \* \* \* the ordinary rules respecting termination of agency upon the death of a principal [do not] apply in this case. \* \* \* the relationship was such that the death of the insured would [not] immediately stay the hand of the company's local agent in fulfilling his obligation in mailing the application and policy." (Italics supplied.)

Goodrich v. Equitable L. Assur. Society, 111 Neb. 616, 197 N. W. 380, *supra,* involved an employer's group policy of the Union Pacific

Railroad Company. In its general office the railroad company maintained an insurance bureau to attend to the needs of its employes with reference to such group policies. In this office it kept for such employes blank forms for change of beneficiaries, originally furnished it by the insurance company underwriting the group policy. After such a form was filled out by an employe, the employer's insurance bureau would forward it by mail to the insurer. The insured employe had left a notice of change of beneficiary with the bureau prior to his death, but it had not been mailed until subsequent thereto. On the question of agency the court stated (111 Neb. 621, 197 N. W. 382):

"* * * *Under these circumstances it seems to us that the railroad company must be considered as the agent of the insurance company.* From the entire record it appears that the insured did all he could do to effect the change in his beneficiary. The notice was made out, was given to the agents [the railroad company] of the insurance company, and the delay in promptly forwarding it was occasioned by the agents of the defendant. * * * the insured may not be deprived of his right to make the change by the neglect of the company to perform a ministerial act." (Citing Adams v. Police & Firemen's Ins. Assn. 103 Neb. 552, 172 N. W. 755.) (Italics supplied.)

■ Based upon the general principles above set forth, it is obvious that in the instant case there is ample evidence to sustain the jury's verdict and the trial court's findings and order based thereon. The evidence is undisputed that prior to his death insured had substantially complied with the policy provisions relative to change of beneficiary and had done everything within his power to effectuate such a change. At the conference on November 24, 1942, he advised both Mr. Remole and Mrs. Manke as to his desires and intention. Pursuant thereto, a change-of-beneficiary blank, originally furnished by the company, was filled in by Mrs. Manke, with the exception of the date, signed by insured, witnessed by Mr. Remole, and delivered with the policy to Mrs. Manke, insurer's cashier. She was then instructed to hold the policy until further notice by insured, upon which notice she was to insert the date in the change-of-beneficiary form and for-

ward the same, together with the policy, to insurer's home office, so that such change might be recorded. Subsequently, when insured received word that his divorce was final, he called Remole and instructed him to complete the change and to forward the notice and policy to the home office at once, at the same time bringing into effect his previous instructions to insert the date in the notice. He was assured by Remole that his instructions would be carried out. Had they been complied with, the notice and policy would have been in the mail prior to his death. That they were held up to await a desired change on the other policy was contrary to his instructions and should not react to defeat his purpose. He had placed in motion the machinery for transmitting the policy and notice to the home office. He had done everything reasonably possible to effectuate the change. What Remole did subsequently, or what he said to Mrs. Manke, or what the latter said or did, or her reasons therefor could not serve to alter, nullify, or otherwise affect insured's final instructions in the matter. Thereafter, there remained for performance only the ministerial acts which the company could not refuse to perform. Thereafter, whatever right the company had to insist upon strict performance of the conditions in the policy was waived when it deposited the proceeds of the policy in escrow pursuant to court order to abide determination of the ownership thereof.

■ There can be little doubt that both Remole and the cashier were acting as agents for the company at the times in question. They had been furnished the blank forms by the company to render this service for policyholders. They had been given specific instructions by it as to how such forms should be completed and how such changes should be effectuated. Therein they followed a custom and practice authorized and recognized by the company for some 17 years. The cashier was actually on the payroll of the company. The receipt for the notice and policy furnished insured at the first conference was made on behalf of the company and signed for it by its cashier on a form upon which the company's name appeared. Upon such facts and under the authorities above referred to, regardless of M. S. A. § 61.08, which specifically designates a solicitor

of insurance as an agent of the company rather than of the insured, we cannot escape the conclusion that both Remole and the cashier were the agents of the insurer in connection with this transaction, and that when insured left the form and policy with them and gave final instructions that they be forwarded to insurer's home office, he had placed in motion the transmission thereof to such office and thereby substantially complied with the conditions of the policy with reference to change of beneficiary.

■ Defendants assert that, notwithstanding the general rules above outlined, Minnesota is committed to a contrary doctrine, as evidenced by Vanasek v. Western Bohemian Fraternal Assn. 122 Minn. 273, 142 N. W. 333, 49 L.R.A.(N.S.) 141, Ann. Cas. 1914D, 1123, and Hughes v. Modern Woodmen, 124 Minn. 458, 145 N. W. 387. In both of the cases cited the insurers were fraternal benefit associations. Under the statutes of this state, in such policies the insured is limited in making changes of beneficiary to certain designated classes therein. The association is prohibited by law from paying the proceeds of its certificates to persons not within the designated class. It is incumbent upon the association to determine whether the beneficiary is within the acceptable class. The statutes and association by-laws based thereon cannot be waived or disregarded. This rule is expressed in United Mut. L. Ins. Co. v. Ward, 201 Minn. 70, 72, 76, 275 N. W. 422, 423, 425, as follows:

"* * * Our statute relating to fraternal insurance, * * * controls the payment of death benefits. The statute recognizes the difference between fraternal insurance and so-called 'old-line' insurance. * * *

*     *     *     *     *

"Payment of the money into court by plaintiff did not operate as a waiver of the provisions of the certificate and the statutes which render the assignment and the pledge ineffective. The society cannot waive the provisions of the statutes."

See, also, Modern Brotherhood v. Quady, 175 Minn. 462, 221 N. W. 721, 59 A. L. R. 162; Ringler v. Ringler, 156 Md. 270, 144 A. 221; Annotation, 78 A. L. R. 970.

As indicated in McCloud v. Aetna L. Ins. Co. 221 Minn. 184, 21 N. W. (2d) 476, the courts of some states are withdrawing from the strict-compliance rule applicable in fraternal benefit policies and adopting the more liberal doctrine applicable to old-line policies. Under the above authorities, however, Minnesota seems definitely committed to the strict-compliance doctrine when statutory rights are involved in fraternal benefit policies.

■■■■ Up to the present we have not had occasion to consider the effect of change-of-beneficiary provisions such as here involved in an old-line policy. We have adhered to some of the principles above expressed in Brajovich v. Metropolitan L. Ins. Co. 189 Minn. 123, 127, 248 N. W. 711, 713, where we stated:

"* * * The indorsement of such change upon the policy was but a formal or ministerial act which the insurance company, under this policy, was obligated to do. It had no option or right to do otherwise. * * *

"Where, as here, the insured has the unrestricted right to change the beneficiary and has done substantially all that he is required to do to effect such change, the change becomes effective notwithstanding the fact that the insurance company has lost the instrument executed by the insured or has failed or refused to indorse such change upon the policy. * * *

"A number of our own cases have been cited by the parties. Most, if not all, of them arose under certificates issued by fraternal and mutual benefit societies. These cases are not specially applicable to the facts in the present case."

In McCloud v. Aetna L. Ins. Co. 221 Minn. 184, 21 N. W. (2d) 476, *supra*, the policy provided that the change became effective as of the date of the execution of the application therefor, so the present issue was not involved. In the Brajovich case, the jury determined as a fact that the notice had actually reached the home office prior to the death of the insured.

A thorough examination of the authorities satisfies us that our conclusion here is not in conflict with our prior decisions and that

it places this court in line with the principles expressed by the great majority of courts on the question presented.

■ Defendants contend that the trial court erred in the reception of evidence of conversations between Remole and insured and between Mrs. Manke and insured, on the ground that such testimony was incompetent under M. S. A. § 595.04, which provides:

"It shall not be competent for any party to an action, or any person interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties, * * *."

We have previously expressed our conclusion that at the times involved Mr. Remole and Mrs. Manke were acting as agents for insurer rather than for insured in this particular transaction. Under the foregoing statute, we have held that the disqualification therein does not extend to an agent of a party to the action if he is not a party thereto or interested in its outcome. Darwin v. Keigher, 45 Minn. 64, 47 N. W. 314; Ikenberry v. New York L. Ins. Co. 127 Minn. 215, 149 N. W. 292; 21 A. L. R. 928. In the latter case this court stated (127 Minn. 220, 149 N. W. 294):

"* * * An agent who transacted the business for the survivor of two contracting parties is not precluded from testifying to the conversations in regard thereto with the deceased party, where such business becomes an issue in litigation."

In line therewith, there can be little doubt that the conversations between Remole and insured at both conferences and between Mrs. Manke and insured at the first conference were admissible.

■ Defendants assert that the court erred in receiving in evidence the testimony of Mr. Chapman, counsel for insured in his divorce proceedings, relative to conversations between them subsequent to the decree of divorce. Mr. Chapman is not a party to the action or interested in its outcome. His employment as counsel for insured had terminated. No claim of privilege was presented. His testimony related primarily to the acts of insured in his presence or to state-

ments of insured relative to his intent to change the beneficiary in his policy. All such statements were otherwise properly in evidence, and the testimony of Chapman with reference thereto was purely cumulative.

The rule is well settled that a new trial should not be granted for error, if any, in the admission of evidence if other evidence properly admitted is sufficient to justify the verdict and there has been no prejudice to the substantial rights of the adverse party. Such prejudice must appear affirmatively. 5 Dunnell, Dig. & Supp. § 7180, and cases cited.

■ The same general principles are applicable to the testimony of Mr. Remole as to his conversations with Mrs. Manke and to the testimony of plaintiff as to her conversations with insured. It is clear that such testimony was nothing more nor less than the repetition of statements or facts otherwise properly admitted in evidence, or, in the alternative, related to matters immaterial to the issues to be determined. Any error in the admission thereof was without prejudice. 5 Dunnell, Dig. & Supp. § 7180, and cases cited.

■ Defendants assert that the notice of change of beneficiary should not have been admitted in evidence because of the insertion of the date thereof subsequent to its execution by insured. The date was inserted pursuant to the instructions of insured given at the time of its execution, when he requested Mrs. Manke to insert such date upon notification that his divorce had become final. It was so inserted upon such notification, prior to his death. As stated in McConnon & Co. v. Hovland, 156 Minn. 222, 224, 194 N. W. 394:

"* * * It was not changing the effect of the instrument, it was simply completing it, under an implied authority in appellant. Herrick v. Baldwin, 17 Minn. 183 (209), 10 Am. Rep. 161; State v. Young, 23 Minn. 551; * * *."

Here, express authority from insured authorized the insertion of the date and completed the instrument prior to his death.

■ Numerous other contentions are advanced by defendants on appeal. We cannot discuss each of them in detail. To do so would

lengthen this opinion unduly. Suffice it to say that we have examined all of them and find them without merit insofar as the material issues here are concerned.

Affirmed.

