# PAUL BROWN, EXECUTOR OF ESTATE OF JACK L. AGIN, AND OTHERS v. MARION AGIN.

109 N. W. (2d) 147.

April 28, 1961—Nos. 38,094, 38,095, 38,100.

*Cant, Taylor, Haverstock, Beardsley & Gray,* for plaintiffs.
*Vennum, Newhall, Ackman & Goetz,* for defendant.

MURPHY, JUSTICE.

We have before us two appeals from orders denying motions for amended findings or for a new trial in three actions brought to re-

cover the proceeds of life insurance policies. The trial court held that decedent's four surviving children, who were plaintiffs, were entitled to the proceeds of two of the policies on his life and that the surviving wife, defendant, was entitled to the proceeds of the third policy. Both parties appeal. The basic issue before us is whether or not a court of equity, in deciding which claimants are entitled to the proceeds of the decedent's policies, should rule that the decedent had or had not done substantially all that he could have reasonably been expected to do in light of all the conditions and circumstances to effectuate his intention to change beneficiaries.

From the record it appears that the decedent, Jack L. Agin, at the time of his death was insured by three policies. One was with the North American Life & Casualty Company for $2,000, another with the Northwestern Mutual Life Insurance Company for $2,000, and a third with the Travelers Insurance Company under a group policy carried by the decedent's employer, Minneapolis-Honeywell Regulator Company, in the amount of $10,000.[1] The right to revoke any designation of beneficiary and the right to designate a new beneficiary or beneficiaries was expressly reserved to the insured under the terms of the policies.

The decedent's first wife, Rose Agin, was originally named as beneficiary in all three policies. She died in 1951. The plaintiffs, Marilyn Brown, Gerald Agin, Thomas E. Agin, and Shirley Pittelkow, are the natural children of Rose Agin and decedent. The plaintiff, Paul Brown, is the husband of Marilyn Brown and is the executor of the estate of Jack L. Agin. In February 1953 Jack L. Agin married the defendant, Marion Agin, and by subsequent endorsement on each of the three policies the second wife was substituted as beneficiary.

Shortly after their marriage Jack L. Agin was hospitalized with a respiratory ailment. Three months thereafter he was again hospitalized for it, and during that hospitalization he suffered a stroke which

---

[1]Upon the commencement of these three actions, the insurance companies deposited with the Farmers and Mechanics Savings Bank of Minneapolis the amounts payable under each of the policies, and each of the companies was then dismissed from the action by stipulation of the parties.

left the right side of his body paralyzed and his vocal cords impaired. Thereafter he lost the use of his right hand and seldom used the telephone.

On May 18, 1956, Jack and Marion separated. On that day, Agin called his daughter, Shirley Pittelkow, who came to his apartment, gathered his personal belongings, except savings bonds and insurance policies, and took him to her home. Before leaving, Agin searched for his policies and bonds but was unable to find them. On May 20 Agin conferred with his attorney regarding the commencement of divorce proceedings against his wife. He explained to his attorney that he did not have his insurance policies and savings bonds and that he had been unsuccessful in his search to find them. He informed his attorney that he wanted to revoke the designation of his wife as beneficiary in each of the insurance policies and that he wished to designate his four children as beneficiaries.

His attorney advised that he secure change-of-beneficiary forms from the insurance companies. Because of his speech difficulty, the attorney suggested that his daughter, Shirley Pittelkow, call these companies and ask them to send the necessary forms to him. The daughter thereupon called the Northwestern Mutual Life Insurance Company and the North American Life & Casualty Company, informing them of her father's intention to divorce his wife and of his desire to change the beneficiaries of his insurance policies. On the same day she called the Minneapolis-Honeywell Regulator Company, Agin's employer, and talked to the official in charge of the company's insurance matters. There was evidence from which the court could find that she introduced herself to this official and explained that she was calling for her father. She requested that a change-of-beneficiary form be sent to him and was advised by the company official that "it would be taken care of here." She explained to him that her father was present and that if he wished the father could speak to him. It was apparently felt that that was unnecessary. Under the terms of the Travelers policy "due notice" to the employer appears to be all that is required to effectuate a change of beneficiaries. All insurance records are maintained by the employer, and it does not appear that any advice or record of any

change of beneficiary is transmitted by the employer to the insurance company.

In due time change-of-beneficiary forms were received from North American Life & Casualty and Northwestern Mutual Life, but subsequent events in the divorce action frustrated the completion of the paperwork which would have evidenced the change of beneficiaries on the records of the companies. The divorce action was commenced by the husband on May 22, 1956, and at a hearing on the husband's motion for a return of the policies, the court decided that the wife should be permitted to retain the papers in her possession and entered an order enjoining interference with or disposition of the husband's property until determination of the action on its merits. Because of this order, neither the North American nor Northwestern Mutual change-of-beneficiary form was returned for completion.

From the record it appears that subsequent to the court hearing Agin again told his attorney that he wanted to change the beneficiaries of his insurance policies so that his children would receive the insurance proceeds instead of Marion Agin and asked how this could be accomplished. He was told that as matters then stood the only possible way of changing beneficiaries would be by the execution of a will. Accordingly, a will was made and signed on October 20, 1956, reaffirming his intention to make his four children beneficiaries of the three policies. Upon executing the will he inquired of his attorney, "[W]ill these moneys from these policies go to my kids?" and he was answered in the affirmative. Jack L. Agin died on December 3, 1957, before the divorce action was called for trial. At the time of his death, tentative agreement for property settlement had been entered into between counsel for the two parties.

The trial judge found that Jack L. Agin had clearly intended to change the beneficiaries of the Travelers and North American policies, that he did everything practicable under the circumstances to effect the change, and that as a matter of fact he did succeed in effecting a change of beneficiary of the policy issued by Travelers. The lower court further found, however, that as to the Northwestern Mutual policy Jack L. Agin did not intend to change beneficiaries and that in

any event he had not done everything practicable under the circumstances to effect a change as to that policy.

■ In discussing the principles of law which apply to the issues before us, it should be noted at the outset that there is no issue here as to the failure of the insured to comply with the provisions contained in the policies with reference to the subject of the change of beneficiary. Such provisions are for the protection of the insurer, and where, as here, the insurance company has deposited the proceeds of the policy to be paid in accordance with the order of the court, it has waived any defense it might have to the claim of either party.[2]

■ Where the insurer is not a party to the litigation, equitable principles govern in regard to the interpretation of change-of-beneficiary clauses. The rule generally applied is that equity regards that as done which ought to have been done; that courts will give effect to the intention of the insured where his failure to complete a change of beneficiary by a return of the policy to the insurer is caused by a refusal of the named beneficiary to surrender the policy to him and where the insured's efforts are otherwise in substantial compliance with the requirements imposed by the contract.[3]

■ It is established by the great weight of authority that the question of whether a change of beneficiary of an insurance policy may be effectuated without delivery of the policy to the insurer for endorsement is determined by (1) whether the insured intended to change the beneficiary and (2) whether he took affirmative action or otherwise did substantially all that he could do to demonstrate that intention without regard to whether he complied with the change-of-beneficiary provisions in the policy.

■ In determining whether the findings of the trial court accord with the principles of law just stated, we must be guided by the principle

[2]Boehne v. Guardian Life Ins. Co. 224 Minn. 57, 28 N. W. (2d) 54; Doering v. Buechler (8 Cir.) 146 F. (2d) 784.

[3]Brajovich v. Metropolitan Life Ins. Co. 189 Minn. 123, 248 N. W. 711; McCloud v. Aetna Life Ins. Co. 221 Minn. 184, 21 N. W. (2d) 476; Boehne v. Guardian Life Ins. Co. 224 Minn. 57, 28 N. W. (2d) 54; Doering v. Buechler (8 Cir.) 146 F. (2d) 784.

that, where an action is tried by the court without a jury, the findings of fact are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence. This is so even though the reviewing court might itself have come to a different conclusion if it had been the fact-finding body. First Trust Co. v. McLean, 254 Minn. 75, 93 N. W. (2d) 517; Hynan v. First Trust Co. 258 Minn. 118, 103 N. W. (2d) 209; 1 Dunnell, Dig. (3 ed.) § 411.

### NORTH AMERICAN AND TRAVELERS INSURANCE POLICIES

We are of the view that the record fully supports the findings of the trial court that Jack L. Agin did everything that reasonably could have been done in the light of all of the surrounding conditions and circumstances to give effect to his intention to change the beneficiaries of the North American and Travelers policies. It is clear from the record that the only reason Agin did not effect an immediate change of beneficiaries was that his wife's act of retaining and withholding the policies prevented him from doing so. At the time of their separation, Agin was determined to make the four children by his first wife the beneficiaries of his insurance. That this determination persisted unchanged throughout the short remainder of his life, and that he did everything which he and his counsel believed he could do under the existing circumstances to achieve this end, is clear from the record. He searched for the policies but was unable to find them. Knowing that his wife was withholding the policies from him, he retained counsel and took immediate steps to get possession of them. He had his daughter contact the insurance companies for the purpose of securing necessary forms for use in changing beneficiaries. He secured, completed, and signed the North American form, but because of the court's order in the divorce action, to which reference will later be made, he did not mail it to the company. There was evidence from which the court could find that, while no change-of-beneficiary form was received or executed with reference to the Travelers policy, Agin did all that was within his power to make a change of beneficiary as to that policy. It appears that under the provisions of the Travelers

policy no written notice or formal act was required to effectuate a change of beneficiaries, "due notice" to the Minneapolis-Honeywell Regulator Company being sufficient. Consequently, the lower court was correct in finding as it did that Shirley Pittelkow's telephone call to the proper official of the company was sufficient notice of Agin's intention to change the beneficiary.

In considering the equities in these two cases it is necessary to keep in mind the relationship of Jack Agin and his second wife at the time of their separation. It appears that the market value of Agin's property was $9,100, in addition to which he and his second wife owned in joint tenancy other property of the value of $4,850. He had a severe coronary sclerosis with at least two acute attacks in the previous 10 years; was unemployable; and, in the opinion of his doctor, was "most likely totally and permanently incapacitated." His wife had kept her job with Minneapolis-Honeywell and had continued her employment there as before she was married. At this time Agin was 55 years of age and his wife was several years his junior. His outlook for the future held the prospect of continuing illness involving medical care and hospital expense. The entire record presents the picture of a brief marriage being terminated with the wife attempting to protect her own interests and the husband and children, on the other hand, moved by family loyalties and obligations, attempting to protect theirs.

## Northwestern Mutual Policy

While much of the evidence that substantiates the findings of the trial court with reference to the North American and Travelers cases also applies to the Northwestern Mutual case, we think there is a distinction which warranted the finding of the trial court that it was the intention of Agin to permit his wife to have the proceeds of that policy. There was evidence by way of a letter written by Agin which indicated that he was in agreement with a property settlement suggested by attorneys for the parties as a result of which his wife, Marion, was to receive the proceeds of the Northwestern Mutual policy. While there is some merit to the claim of the plaintiffs that this letter indicated a grudging compromise of their differences, we nevertheless feel that since different inferences may be drawn from the conduct of the

parties the determination is in the final analysis one for the trial court.

5. It is the contention of the defendant wife that the restraining order in the pending divorce case prevented Agin from effectuating a change of beneficiaries in any manner. A brief reference should be made to the circumstances which gave rise to this order. After Agin started the divorce action against his wife, he sought an order of the district court for return of the insurance policies and other property, including savings bonds, which she had in her possession. At the hearing on the motion for this order the trial court directed that no bonds were to be cashed and the insurance policies were to remain with the wife. The order, dated October 10, 1956, provided:

"IT IS ORDERED, the both parties to this action be and hereby are restrained from selling or disposing or in any way interfering with the property of the parties or the property of either party and that the defendant keep possession of the insurance policies and government savings bonds subject to the restraint terms of this order."

It appears to have been the understanding of the parties that this order should remain in effect pending a property settlement. Mrs. Agin had not interposed an answer in the divorce action. No application was made by her for alimony or for an order restraining Agin from interfering in any way with his property. Aside from the action of her attorney in objecting to the surrender of the insurance policies, there was nothing before the court to indicate that Mrs. Agin looked to the proceeds of the policies as a source from which she would receive a property settlement by divorce decree. No showing was made that the order was necessary to protect the property rights of the wife.

In support of her claim that the order of the court effectively prevented a change of beneficiaries, the defendant relies on Candler v. Donaldson (6 Cir.) 272 F. (2d) 374, as controlling authority. In that case the insured actually completed a change of beneficiary from his wife to his mother in violation of a temporary restraining order made in a divorce action. The court held that the restraining order had for its purpose the preservation of the status quo between the parties to the divorce action until final adjudication of their property rights and that the order prevented the husband from eliminating the wife as a bene-

ficiary until a final order was made. Although the court agreed in its opinion that the right of a husband to change the beneficiary of his policy from his wife to another is well established, where that right is reserved in the policy, it went on to say that (272 F. [2d] 376) "it is also well established that under certain circumstances equities may arise in favor of the named beneficiary which would deny to the insured the right to make such a change." The court held that the equities in favor of the wife were such that the right to make the change was denied to the husband. It was further pointed out that the order was preliminary to a final order adjudicating property rights of the parties and that (272 F. [2d] 377) "[u]nder the Michigan statutes the policy herein involved was part of the property of the husband that was to be considered by the Court in making such final order. Sec. 25.131, M. S. A., Comp. Laws Mich. 1948, § 552.101." This decision may be distinguished from the case before us not only for the reason that the equities of the wife were superior to those of Mrs. Agin but on the further ground that we have not been cited to any Minnesota statute which comprehends that the husband's insurance policies are to be regarded as part of the property which might be considered in making a final order in a divorce action.

The plaintiffs rely on Milewski v. Milewski, 351 Ill. App. 158, 114 N. E. (2d) 419, where the insured, pending the final determination of his wife's action for separate maintenance, was temporarily enjoined from selling, transferring, or otherwise disposing of any of his assets or property. In violation of the injunction the insured revoked the designation of his wife and substituted his daughter as the beneficiary in his insurance policies. He died before the final decree was entered in his wife's separate maintenance action. In an action by the wife to recover the proceeds of the policies she claimed that because of the insured's violation of the temporary injunction a court of equity should restore the status quo and award her the proceeds of the policies. In holding for the daughter, the Illinois court pointed out that the order was only temporary and could only have been granted to assure a fund out of which separate maintenance could be paid, taking the view that the injunction was not designed to protect the rights of the wife as a widow in the estate of her deceased husband.

Contrary to the holding in the Candler case the court was of the view that a restraining order does not create vested property interests, stating (351 Ill. App. 163, 114 N. E. [2d] 421):

"* * * For the court now to require a restoration of plaintiff as a beneficiary, because of violation of the injunction * * *, would be a decision on the title to the proceeds in order to compel compliance with a temporary order in nowise designed to determine such title."

In the case before us we are of the view that the court's order did not effect a binding disposition of the insurance policies. As the court pointed out in Milewski v. Milewski, *supra,* upon the death of the insured the effect of the temporary restraining order as well as the jurisdiction of the court is at an end.[4]

■ It is unnecessary for us to resolve the conflicting authorities cited by the respective parties on the issue of whether or not a change of beneficiary may be effected by the execution of a will. It is sufficient to say that the act of the decedent in naming his children as legatees to whom the proceeds of the insurance policies should be paid is persuasive evidence of his intent and supports the conclusion of the trial court that Agin did all that he reasonably could do under the circumstances to effectuate the change in beneficiaries.

Affirmed.

Mr. Justice Otis, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[4]See, Hynan v. First Trust Co. 258 Minn. 118, 103 N. W. (2d) 209.