## SUSAN LYNN PABST, FORMERLY SUSAN LYNN HESSE, v. HOWARD O. HESSE.

173 N. W. (2d) 925.

January 16, 1970—No. 41873.

*James G. Paulos,* for appellant.

*Newcome, Wallace & Newcome,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Peterson, and Graff, JJ.

PETERSON, JUSTICE.

The issue in this case is whether before his death the insured under a life insurance policy had effectively changed the

beneficiary. The parties to the action are the two persons claiming to be that beneficiary: Defendant, Howard O. Hesse, the insured's father, who was originally named in the policy, and plaintiff, Susan Lynn Pabst, formerly Susan Lynn Hesse, the widow of the insured and the alleged substitute.

After a trial to the court, judgment was entered for the plaintiff. The defendant appeals from the order denying his motion for a new trial. We affirm.

On November 1, 1964, Robert H. Hesse, then 18 years old, single, and in the Navy, purchased a life insurance policy on his life from Metropolitan Life Insurance Company. The policy stated that the company would pay $9,700 to the beneficiary if the insured met an accidental death. It also provided that the insured could change beneficiaries but that any change "will not be binding upon the Company unless in writing and filed at the Home office."

The insured married Susan on August 13, 1966, and immediately thereafter asked his mother to deliver the policy and premium payment book to Susan so that she could assume the premium payments. The mother complied and Susan began making payments. The trial court found that the insured told his mother that he wanted to make his wife the beneficiary and that, to effectuate that desire, he requested Susan's aunt to assist Susan in completing the change-of-beneficiary forms and mailing them to him for his signature. In September and October, Susan and her aunt called Metropolitan's regional office, requested the necessary forms, and were told that the original soliciting agent would come to the home with them. The trial court found that due to a variety of circumstances, the forms were not delivered to plaintiff until January 25, 1967. They were promptly filled out and mailed to the insured, who was on the U. S. S. Yorktown in the Pacific. Susan received a copy of the change-of-beneficiary form, signed by Robert, on February 8, 1967. She called the agent and he agreed to come over for it and to transmit it to the home office.

On February 13, 1967, Robert was killed in a shipboard accident. This was a day or two before the agent came to Susan's home for the forms and shortly before Susan gave birth to Robert's child.

When Metropolitan's home office received the change-of-beneficiary documents, they refused to pay Susan, relying upon that portion of the policy quoted above. When Susan began this suit, the insurer paid the policy amount into the court and was dismissed from the action.

 The provision of the insurance poicy defining the proper mode of changing beneficiaries is the nucleus of defendant's argument. But this is a fragile core. As we said in Brown v. Agin, 260 Minn. 104, 109, 109 N. W. (2d) 147, 150 (dealing with an identical policy provision):

"* * * Such provisions are for the protection of the insurer, and where, as here, the insurance company has deposited the proceeds of the policy to be paid in accordance with the order of the court, it has waived any defense it might have to the claim of either party."

There is another somewhat different theory upon which the literal meaning of beneficiary-alteration clauses have been disregarded. In Boehne v. Guardian Life Ins. Co. 224 Minn. 57, 66, 28 N. W. (2d) 54, 60, after noting the concept of waiver, we said:

"There is also authority for the viewpoint that the receipt of the notice and policy and endorsement of change of beneficiary thereon by the insurer involve purely ministerial acts, which the latter cannot refuse to perform after the death of the insured if, prior thereto, insured has done everything reasonably within his power to effect the designated change of beneficiary."

Whichever reason is given, the result is the same. We ignore the literal requirements of the policy and apply equitable principles to effectuate the insured's demonstrated intent. 2 Appleman, Insurance Law and Practice, § 985. The real issue is, of course,

whether the insured adequately evinced his intent to name Susan as beneficiary.

■ Mailing the change-of-beneficiary form directly from the aircraft carrier to the insurer's office in the Twin Cities or to the agent from whom he had purchased the policy would probably have facilitated the insured's desired change, but to hold that there was no effective change simply because the insured did not do this—as defendant urges—would be unrealistic, both in view of our decisions holding certain acts sufficient to evidence this intent[1] and on the basis of commonsense. The evidence unequivocally indicates that the insured intended his wife to be the beneficiary. After his marriage the insured quickly and repeatedly asked others to assist in changing the beneficiary. He requested that his wife pay the premiums and was therefore certainly well aware that she was doing so and that she held the policy book. In all of her contacts with the insurer before Robert's death, Susan was acting not voluntarily but on Robert's direction. Robert actually made a written record of his intent, signed it, and sent it to his wife for forwarding to the soliciting agent. (He may have sent it to her rather than directly to the insurer because he was aware of Metropolitan's policy of having the soliciting agent service his policies.) We find it difficult to conceive of what more this young man could have done to evince his desire that his wife be the beneficiary of the insurance policy.

Affirmed.

---

[1] Brown v. Agin, 260 Minn. 104, 109 N. W. (2d) 147; Boehne v. Guardian Life Ins. Co. 224 Minn. 57, 28 N. W. (2d) 54; Brajovich v. Metropolitan Life Ins. Co. 189 Minn. 123, 248 N. W. 711.