**Delores A. GWIN, Appellant,**

v.

**Jean GAPPA, Respondent.**

**No. C7–86–25.**

Court of Appeals of Minnesota.

Oct. 14, 1986.

Gary E. Leonard, Alderson, Ondov, Leonard & Sween, P.A., Austin, for appellant.

Bob A. Goldman, Tuveson, Goldman & Nelson, Albert Lea, for respondent.

Heard, considered and decided by HUSPENI, P.J., and PARKER and RANDALL, JJ.

## OPINION

HUSPENI, Judge.

Appellant, Delores Gwin, brought a declaratory judgment action to determine who was entitled to the benefits of Dale Gappa's life insurance policy. After a nonjury trial the court found that respondent, Jean Gappa, was the proper beneficiary. On appeal Gwin argues that the trial court erred in finding the designation of beneficiary form invalid; in requiring that Gwin

prove the insured had not changed his mind since signing the change of beneficiary form, and in finding that the insured's intent was unclear and ambiguous. We affirm.

## FACTS

At the time of his death, Dale Gappa (the insured) was the holder of an insurance policy with a face value of $10,000. Immediately after his death, his ex-wife Jean Gappa attempted to claim the insurance benefits as the named beneficiary on the original insurance policy. At the same time Delores Gwin, a close friend of the insured's, claimed she was the beneficiary by operation of a change of beneficiary form the insured had executed. The insurance company, by stipulation, paid the proceeds to the court pending resolution of the conflicting claims.

All the parties agreed that the change of beneficiary form had been signed by the insured. The completed form designated Gwin as the primary beneficiary. However, there was conflicting testimony about whether the designated beneficiary portion of the form was in the insured's handwriting or another's.

Janice Brouwers, the insured's sister, initially suggested a change in beneficiary to the insured. Brouwers testified that she found her brother's insurance policy among their father's papers which she examined after their father's death on September 9, 1984. Brouwers stated that when she found the policy she took it to the insurance agent. The agent commented to her that the insured's ex-wife was still listed as the beneficiary, that this was somewhat unusual and that the insured might want to change the beneficiary. The agent gave Brouwers a change of beneficiary form for the insured.

Brouwers testified that when she discussed the policy with the insured he indicated surprise that the policy was still in effect because he had not paid the policy premiums for some time. (The premiums had been paid from the interest the policy had earned.) Brouwers testified that the insured told her he would change the beneficiary and mentioned Brouwers, their sister, his nephews and Gwin as possible beneficiaries. However, the insured did not indicate specifically to Brouwers whom he would designate as beneficiary. He then signed the form. Brouwers signed as a witness. At that time, the insured had not completed any part of the form. Brouwers did not see the form again until after the insured's death. She testified that the beneficiaries' names on the change form appeared to have been completed in the insured's handwriting.

Delores Gwin also testified that the designated beneficiary portion of the change form had been completed in the insured's own handwriting. She stated that the insured had shown her the form and told her that he had designated her as beneficiary and that he did not want his ex-wife and children to have the money from the insurance policy.

The day after the insured died Gwin went to his home to get some of her personal belongings. She stated that she found the change of beneficiary form in the house and that same day took the form to the insurance company to claim the proceeds.

Dale Gappa, Jr., the insured's son, testified that he and his two sisters had gone to the insurance office shortly after their father's death. They met with an insurance agent and asked to see the policy. The policy listed Jean Gappa as beneficiary. They then went ahead and made the necessary funeral arrangements with the understanding that the proceeds from the insurance policy would be available to cover funeral expenses. That same afternoon the insurance agent called Dale and told him that someone else was also claiming the benefits.

The insured's son testified that the handwriting designating the beneficiaries on the change form could possibly be his father's. The insured's two daughters testified that the handwriting was not their father's. They also pointed out that their father had

never been able to remember birthdays and yet the change form accurately noted the birth dates of the contingent beneficiaries which were his nephews and Craig Gwin.

The trial court found that the insured's intent was unclear and ambiguous and concluded that Jean Gappa was entitled to the proceeds from the insurance policy.

## ISSUE

Did the trial court err when it concluded that there was not an effective change of beneficiary and therefore the original beneficiary was entitled to the proceeds of the insured's life insurance policy?

## ANALYSIS

### I.

Gwin did not move for a new trial or amended findings. Therefore, this court's review is limited to determining whether the evidence in the record supports the trial court's findings of fact and whether those findings support the trial court's conclusions of law. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976). When reviewing a trial court's findings:

[W]e must be guided by the principle that, where an action is tried by the court without a jury, the findings of fact are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence. This is so even though the reviewing court might itself have come to a different conclusion if it had been the fact-finding body.

*Brown v. Agin*, 260 Minn. 104, 109–10, 109 N.W.2d 147, 151 (1961).

The trial court found in part:

4. It has not been shown by a preponderance of the evidence that the beneficiaries named in [the change form] were written in by [the insured] or that he intended those named to be the new beneficiaries.

5. [The insured] failed to deliver, file or record [the change form] with [the insurer]. No evidence has been offered to

show why he failed to do so. Such failure suggests that he intended not to effectuate a change in beneficiaries.

Gwin argues that the weight of the evidence showed that the insured had intended Gwin to be the beneficiary and had completed the change form to reflect that intent. Our review of the record shows that there was conflicting testimony about whether the insured himself had written in the names of the beneficiaries. There were no witnesses to the completed form. Also the insured did not indicate to anyone other than Gwin his intent to specifically designate her as beneficiary. It is the duty of the trial court, when sitting as fact-finder, to hear and weigh the testimony and to judge the credibility of each witness. Minn.R.Civ.P. 52.01. Under the facts here present, we cannot say that the trial court was clearly erroneous in finding that Gwin had not shown by a preponderance of the evidence who the insured intended to designate as beneficiary.

■ Gwin also claims that the findings show that the trial court applied two erroneous legal standards. First, Gwin contends the trial court imposed a requirement that the change of beneficiary form be completed in the insured's own handwriting. We do not find the language of the trial court's finding to so indicate. The trial court only required some proof that the insured actually intended the individuals listed on the change form to be the new beneficiaries.

■ Gwin also claims that the trial court's finding regarding the insured's failure to deliver the change of beneficiary form shows that the trial court erroneously believed the change form must be delivered to be effective. We do not read this finding to require delivery. Rather the finding indicates that failure to deliver suggests a lack of intent to effect the change.

### II.

Gwin also challenges the trial court's conclusions of law which read in part:

1. The Designation of Beneficiaries by Owner form * * * was executed by Dale L. Gappa, Sr. but whether he designated the beneficiaries therein named is unclear and ambiguous.

2. That the failure of Dale L. Gappa, Sr. to deliver, file, or record [the] Designation of Beneficiaries by Owner [form] with the Northwestern Mutual Life Insurance Company without evidence to support the reasons for said failure creates an unclear and unambiguous [sic] intent to change the designated beneficiary on the life insurance policy * * *.

■ Gwin argues that the trial court's findings do not support these conclusions. We cannot agree. In *Brown v. Agin*, 260 Minn. 104, 109 N.W.2d 147 (1961), the supreme court set out a two-part test to use when determining whether there has been an effective change of beneficiary.

(1) whether the insured intended to change the beneficiary and (2) whether he took affirmative action or otherwise did substantially all that he could do to demonstrate that intention without regard to whether he complied with the change-of-beneficiary provisions in the policy.

*Id.* at 109, 109 N.W.2d at 151. The facts of the present case show that, while the insured may have intended to change beneficiaries, he did not clearly demonstrate whom he intended to designate as beneficiary.

■ As the trial court's findings indicate, there was conflicting evidence about whether the insured had written in the names of the beneficiaries on the change form. The trial court was required to determine which witnesses' testimony was the most credible. In addition, there was no evidence other than Gwin's own testimony that the insured intended those named on the change form to be the beneficiaries. The insured communicated to his sister his intent to change beneficiaries, but he did not communicate his intent as to whom those intended beneficiaries would be. Also, there were no witnesses to the completed form which listed the alleged designated beneficiaries. *See Lemke v. Schwarz*, 286 N.W.2d 693 (Minn.1979) (the insured gave letter in his own handwriting to daughter stating he wanted her to be the beneficiary); *Boehne v. Guardian Life Insurance Co.*, 224 Minn. 57, 28 N.W.2d 54 (1947) (the insured told two insurance company employees of his intent to change beneficiaries and had his insurance agent witness the completed form).

■ Delivery of the change of beneficiary form to the insurance company is not essential to effect a change in beneficiaries. However, as the trial court concluded, such a failure may create confusion about the insured's intent. When examining the intent of the insured:

If there exists any confusion as to the insured's intent or conflicting expressions of intent, then the named beneficiary should be entitled to the proceeds.

*Lemke*, 286 N.W.2d at 696. The trial court's findings here evidence the insured's failure in several respects to affirmatively demonstrate his intent. Under these circumstances, the trial court did not err in determining the insured's intent was unclear and ambiguous.

■ Finally, Gwin argues that the trial court placed upon her not only the burden of proving the change form was valid but also the burden of proving that the insured did not revoke the change form. We can find nothing in the trial court's findings or conclusions to suggest that it imposed such a burden, particularly in light of the fact that the trial court found there was no valid change of beneficiary.

## DECISION

The insured's intent regarding a change in beneficiaries was unclear and therefore the trial court correctly determined that the original beneficiary was entitled to the proceeds of the insurance policy.

Affirmed.