**In re the WILL and appointment of Estate OF Thomas J. KIPKE, deceased, Respondent,**

**and**

**Conservatorship of Carol Kipke and Life Insurance Company of the Southwest, Respondent,**

**v.**

**John G. KIPKA, Appellant,**

**and**

**Terrance J. Kipke, et al., Intervenors.**

No. C5–01–1966.

Court of Appeals of Minnesota.

June 4, 2002.

James B. Gasperini, Afton Law Office, P.A., Afton, for respondent Estate of Thomas Kipke.

David T. Magnuson, Margaret M. Murphy, Magnuson Law Firm, Stillwater, for appellant.

George L. May, May & O'Brien Law Offices, Hastings, MN, for intervenors.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Considered and decided by HALBROOKS, Presiding Judge, PETERSON, Judge, and HUSPENI, Judge.

## OPINION

HUSPENI, Judge.*

In challenging the district court's grant of summary judgment to intervenors and respondent estate, appellant argues that the district court erred in determining that (1) the Minnesota Durable Power of Attorney Act prohibits appellant from receiving benefits of a decedent's non-probate assets because decedent designated appellant as his attorney-in-fact prior to naming him a beneficiary of those assets, (2) the decedent's change of beneficiary on annuity life insurance policies was invalid, and (3) appellant was not the rightful owner of a checking account in his name and an IRA on which he was a beneficiary. We affirm in part and reverse in part.

## FACTS

On May 17, 1999, decedent Thomas Kipke executed a statutory Short Form Power of Attorney designating his grandson, appellant John G. Kipka, attorney-in-fact. Shortly thereafter, decedent revoked a previously executed power of attorney under which his son, intervenor Terrence Kipke, had been designated attorney-in-fact. After appellant became attorney-in-fact, decedent established an IRA account naming appellant as beneficiary and a checking account in appellant's name.

Subsequent to appellant becoming attorney-in-fact, decedent also changed the beneficiary on three of his annuity life insurance policies, naming appellant as bene-

Minn. Const. art. VI, § 10.

ficiary. Decedent's sons, intervenors Terrence K. Kipke and John K. Kipke, had previously been beneficiaries under the policies. When decedent completed the change of beneficiary forms, he neglected to have his signature witnessed. He sent the forms to his insurance agent's office. An employee there, Andrea Gagne, signed her name on the witness line and submitted the forms to the insurers. The insurers accepted the forms and sent letters acknowledging that the changes in beneficiary had been made.

Subsequent to decedent's death, respondent Estate of Thomas Kipke brought an action to declare that the checking account and the IRA were estate assets. Intervenors brought an action to set aside the beneficiary changes in the three annuity policies. Appellant brought an action seeking to declare the beneficiary changes valid and seeking ownership of the IRA, the checking account, and the three annuity policies. Pursuant to stipulation of the parties and order of the court, the insurance companies deposited their respective annuity sums in escrow, and were dismissed from this action.

On the day of trial, the parties stipulated that there were no factual disputes, and agreed to submit all issues by means of summary judgment motions. The district court concluded that Minn.Stat. § 523.24 (2000) of the Minnesota Durable Power of Attorney Act prohibited appellant from receiving any of the annuity life insurance proceeds because he had been named an attorney-in-fact by decedent before the beneficiary changes were made on the annuity policies. The court also concluded that because the insurance companies processed the change in beneficiary forms without requiring that the forms be prop-

erly witnessed, the beneficiary changes were invalid. Finally, the court determined that the checking account and the IRA were assets of the estate because decedent did not intend that these accounts be transferred to appellant upon decedent's death.

## ISSUES

1. Did the district court err in concluding that Minnesota's Durable Power of Attorney Act, Minn.Stat. § 523.24, subd. 6(3) (2000), prohibited a principal from designating an attorney-in-fact as the beneficiary of insurance?

2. Did the district court err in rescinding insurance policy beneficiary changes that were made prior to death partly on the basis that the changes were made without being properly witnessed?

3. Did the district court err in concluding that the decedent did not intend that a checking account and an IRA would pass to appellant?

## ANALYSIS

■ In an appeal from a summary judgment where the parties agree that the material facts are not in dispute, our review is limited to determining whether the district court erred in its application of the law. *Reads Landing Campers Ass'n v. Township of Pepin,* 546 N.W.2d 10, 13 (Minn.1996). Where the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion, reviewed de novo by the appellate court. *Lefto v. Hoggsbreath Enters.,* 581 N.W.2d 855, 856 (Minn.1998).[1]

---

**1.** Intervenors suggest that the standard of review is abuse of discretion because summary judgment was rendered in an interpleader

action. Interpleader actions are generally governed by equitable principles and rules. *Metro. Life Ins. Co. v. Belland,* 583 N.W.2d

### Durable Power of Attorney Act

██ Minn.Stat. § 523.24, subd. 6(3) (2000), a provision of the Minnesota Durable Power of Attorney Act (act), governs the authority of an attorney-in-fact to make decisions regarding the insurance policies of the principal. It reads, in pertinent part:

In a statutory short form power of attorney, the language conferring general authority with respect to insurance transactions, means that the principal authorizes the attorney-in-fact * * * to change the beneficiary of the contract of insurance, provided, however, that the attorney-in-fact cannot be a new beneficiary except, if permitted under subdivision 8, the attorney-in-fact can be the beneficiary of death benefit proceeds under an insurance contract, or, if the attorney-in-fact was named as a beneficiary under the contract which was procured by the principal prior to the granting of the power of attorney, then the attorney-in-fact can continue to be named as the beneficiary under the contract or under any extension or renewal of or substitute for the contract.

Minn.Stat. § 523.24, subd. 6(3).

Respondent estate and intervenors argue that the statute limits the ability of both the principal and the attorney-in-fact to name the attorney-in-fact as a beneficiary. Appellant, to the contrary, argues that the clear language of the statute limits only the ability of the attorney-in-fact to make beneficiary designations, and that the statute does not address any powers of the principal. We find the argument of appellant to be the more persuasive one.

When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation. *Am. Fam. Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (citation omitted). Here, because the statute is not particularly clear and the parties provide reasonable but opposing interpretations, we conclude that the statute is ambiguous. Arguably, the ambiguity lies in the "passive" voice in which the statute declares that "the attorney-in-fact cannot be a new beneficiary." Where a statute is ambiguous, a court applies established canons of construction and must presume that the legislature did not intend absurd and unreasonable results. Minn.Stat. § 645.17(1) (2000).

██ Respondent estate and intervenors urge that "statutory enactments * * * are to be read in harmony with the existing body of law * * * unless an intention to change or repeal * * * is apparent." *Swogger v. Taylor,* 243 Minn. 458, 465, 68 N.W.2d 376, 382 (1955). There is a presumption against a change in the common law that is especially strong where the change would be contrary to public policy. *Kelly v. First Minneapolis Trust Co.,* 178 Minn. 215, 218, 226 N.W. 696, 697 (1929). Thus, argue respondent estate and intervenors, the statute prohibits attorneys-in-fact from being named beneficiaries in order to foster public policy concerns and to enforce common-law agency duties that prohibit attorneys-in-fact from self-dealing. While we do not disagree with the argument raised in reference to attorneys-in-

---

592, 593 (Minn.App.1998) (citing *Brajovich v. Metro. Life Ins. Co.,* 189 Minn. 123, 129, 248 N.W. 711, 714 (1933)). However, the summary judgment on appeal here resulted from the parties' agreement that there was no fac-

tual dispute, and that the decision was one of law. Both awards of summary judgment and questions of statutory interpretation are reviewed de novo.

fact, we fail to see how prohibiting a principal from designating his attorney-in-fact as a beneficiary counters the wisdom of the common-law duty prohibiting attorneys-in-fact from self-dealing.

We agree with appellant's observation that interpreting the statute as a limitation on a principal's power to act would prohibit a spouse who was a principal, from naming the other spouse a beneficiary on any insurance policy, once that other spouse is named an attorney-in-fact. Intervenors attempt to weaken this observation by noting that powers of attorney are usually not given unless the principal is in poor health; a time at which life insurance beneficiaries have long since been designated. We cannot read into the statute, however, a legislative intent that powers of attorney are to be executed only by those in ill-health. Indeed, the "Short Form Power of Attorney" document itself contains a provision for automatic termination of the powers granted upon commencement of dissolution, legal separation, or annulment of marriage. Minn.Stat. § 523.23, subd. 1 (2000). This language, it seems to us, indicates that the legislature contemplated use of the creation of the durable power of attorney long before ill health plagued the principal.

Intervenors also argue that persons could avoid the limitations contained in the statute by granting power of attorney under a common-law power of attorney, rather than utilizing the statutory Short Form Power of Attorney. This argument, however, appears to contradict intervenors' earlier argument: that common-law duties prohibit self-dealing by attorneys-in-fact.

Respondent estate argues that appellant's interpretation of Minn.Stat. § 523.24, subd. 6(3), would render meaningless the provisions of Minn.Stat. § 523.24, subd. 8 (2000), which limits the attorney-in-fact's ability to make gift

transactions. Subdivision 8 reads, in pertinent part:

> notwithstanding that the principal * * * may have authorized the attorney-in-fact to transfer the principal's property to the attorney-in-fact, no attorney-in-fact * * * may be the recipient of any gifts in any one calendar year which, in the aggregate, exceed $10,000 in value to each recipient.

Minn.Stat. § 523.24, subd. 8(2).

We note initially that the Short Form Power of Attorney requires the principal to elect whether the attorney-in-fact is authorized to transfer the principal's property to the attorney-in-fact. Minn.Stat. § 523.23, subd. 1 (2000). Here, decedent elected not to provide this power to appellant. Respondent estate argues that inasmuch as subdivision 8(2) applies in cases where an attorney-in-fact is authorized to transfer the principal's property to the attorney-in-fact, it follows that subdivision 6(3) must apply only to those instances, such as exists here, where the attorney-in-fact is not so authorized to transfer the principal's property. Therefore, respondent estate concludes that subdivision 6(3) functions to limit the ability of an attorney-in-fact to benefit from an act by the principal. To the extent that we are able to follow the logic of this argument, both the logic and the argument fail. Subdivision 8 in no way limits the authority of a principal to act, nor does the subdivision reference any authority of the principal to act under subdivision 6(3).

■ Finally, in our effort to determine whether Minn.Stat. § 523.24, subd. 6(3), limits in any way the authority of a principal to act, we find particularly persuasive the following language appearing at the top of the "Short Form Power of Attorney" document: "[t]his power of attorney authorizes but does not require, the attor-

ney-in-fact to act for you." Minn.Stat. § 523.23, subd. 1. If, because of this language, an attorney-in-fact chose not to act, and if we were to decide that because of the language of Minn.Stat. § 523.24, subd. 6(3), a principal was prohibited from acting, not only would the purpose of appointing an attorney-in-fact in the first place largely be frustrated, but the assets of a principal likely would be under the control of no one. Instead, we believe, the document language implicitly recognizes that the principal retains the right to act with regard to the principal's property, notwithstanding the statutory limitations placed upon the attorney-in-fact. If we were to read subdivision 6(3) so as to limit the power of a principal to act, we believe we would render the statute unreasonable and absurd. *See* Minn.Stat. § 645.17 (2000) (when a statute is ambiguous, this court must presume legislature did not intend an absurd and unreasonable result).

Therefore, we conclude that the statute does not limit the principal's ability to control his property, including making beneficiary changes. Accordingly, appellant is not precluded by the act from receiving benefits as a beneficiary of decedent's annuity policies.

## Change of Beneficiary to Insurance Annuity Contracts

Having concluded that Minn.Stat. § 523.23, subd. 6(3), permits a principal to name his attorney-in-fact as a beneficiary, we must determine whether the district court erred in invalidating the change of beneficiary forms executed by decedent. We note initially that the change of beneficiary forms were accepted by the insurance companies, and that the changes were actually made to the policies. While there is no dispute that decedent had authority under the policies to change beneficiaries, the policies required that the change of beneficiary form be completed and signed by the insured and by a witness.

The district court concluded that decedent's non-compliance with the witness requirement on the change of beneficiary forms invalidated the changes he requested. In reaching this conclusion, the court relied on *Bhd. of R.R. Trainmen v. Benson*, 45 F.2d 421 (D.Minn.1930). In *Benson*, the court stated the rule that an insured must change a beneficiary designation in a manner pointed out by contract and any material deviation will ordinarily invalidate the transfer. *Id.* at 424. *Benson* also listed exceptions to that rule, however, and ultimately upheld the change in beneficiary despite deviation from the policy provisions regarding a change in beneficiary. *Id.* at 425. We find reliance on *Benson* to be misplaced.

■ Moreover, the supreme court has made clear that "a change of beneficiary may properly be effected in spite of the failure of the insured to comply with each and every policy requirement." *Lemke v. Schwarz*, 286 N.W.2d 693, 695 (Minn.1979) (citations omitted). This is because

> [s]uch provisions are for the protection of the insurer, and where, as here, the insurance company has deposited the proceeds of the policy to be paid in accordance with the order of the court, it has waived any defense it might have to the claim of either party.

*Id.* (quoting *Brown v. Agin*, 260 Minn. 104, 109, 109 N.W.2d 147, 150 (1961)). In this case, the insurers processed the change of beneficiary forms and, in fact, changed the beneficiary to reflect the decedent's request. The insurers have raised no objection to payment, and all proceeds have been deposited in the court. Therefore, pursuant to *Lemke*, we are required to apply a two-part test asking:

> (1) whether the insured intended to change the beneficiary and (2) whether

[the insured] took affirmative action or otherwise did substantially all that he could do to demonstrate that intention without regard to whether he complied with the change-of-policy beneficiary provision in the policy.

*Id.* (citing *Brown,* 260 Minn. at 109, 109 N.W.2d at 151).

■ Here, based on the undisputed facts,[2] decedent called his agent's office, requested the change in beneficiary forms and an employee, Andrea Gagne, completed the top portion of the forms and sent them to decedent for his completion and signature. He then completed and signed the forms and returned them to the agent's office, whereupon Gagne signed her name as a witness rather than returning the form to decedent to procure a witness to his own signature. Gagne then sent the forms to the respective insurance companies who accepted them and effected the changes. Decedent was never told that the forms were improperly completed; his intention was clearly to change beneficiaries. He took affirmative action to do so. Under the circumstances, decedent did everything practicable to effect the change.

■ Respondent estate and intervenors argue on appeal that Gagne had no authority to bind the insurance companies because no agency relationship existed between her and the insurance companies. The existence of an agency relationship is

a question of fact. *White v. Boucher,* 322 N.W.2d 560, 566 (Minn.1982). We note again, however, that the parties agreed that there was no dispute as to any facts in this case and submitted all issues for resolution by summary judgment. The question of agency, therefore, was not addressed by the district court.

A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it.

*Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn. 1988). Therefore, we do not address the question of agency.[3]

The record reveals that decedent substantially complied with the provisions of the annuity life insurance policies in making a change of beneficiary. We, therefore, reverse the district court's determination that the change of beneficiary was invalid.

## Checking Account and IRA Account

■ The district court concluded with respect to the IRA and checking accounts that first, these accounts were assets of decedent's estate because they were intended for use by him when he was alive and that appellant never considered these funds to be his. Second, the court concluded that Minn.Stat. § 523.24, subd. 6(3), precluded appellant's receipt of these assets.

**2.** To the extent the parties attempt to raise questions of fact in their appellate briefs, those questions were not litigated in district court; the parties agreed there that the relevant facts were not in dispute. A reviewing court will not address an issue raised in the district court if the district court did not rule on the issue. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988).

**3.** While respondent argues no agency relationship exists, it concedes the issue is not

properly before this court. As to intervenors, who were the prior beneficiaries under the policies, *Benson,* 45 F.2d at 424, states:

Where the [insurance company] has waived strict compliance with its own rules, and in pursuance of a request of the insured has issued to him a new certificate in which the beneficiary is changed, the original beneficiary cannot complain that the course indicated by the regulations was not pursued.

Because of our determination that the act does not limit the ability of the principal to name his attorney-in-fact as a beneficiary, the district court's conclusion that appellant was prohibited by Minn.Stat. § 523.24, subd. 6(3), from receiving the IRA and checking account proceeds is erroneous. Moreover, subdivision 6(3) addresses only insurance transactions, not IRAs or checking accounts.[4]

With respect to the court's conclusion that the checking account was an asset of decedent's estate, appellant argues that he has a right of survivorship and cites as support Minn.Stat. § 524.6–204 (2000), which states:

[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention.

The checking account established in appellant's name was not a joint account, however. Therefore, there is no right of survivorship under the statute. Respondent estate argues (and the district court agreed) that because appellant admits that the checking account assets were decedent's for use to pay bills while he was alive, there is no evidence that decedent intended them to pass to appellant after death. We agree. We, therefore, conclude that the district court correctly determined that the checking account was an asset of decedent's estate.

We reach the opposite conclusion with regard to the IRA, however. Decedent's intentions regarding that account were clear. He named appellant the beneficiary of that account. Because we have determined that a principal retains the right to make beneficiary changes under the act, including the right to designate his or her attorney-in-fact a beneficiary, and we are directed to no other statutory authority under which a principal's power over an IRA would be limited, the IRA is rightly appellant's.

### DECISION

We reverse the district court's determination that appellant was prohibited by statute from receiving benefits of the decedent's annuity policies and IRA account. We reverse the district court's determination that the change of beneficiary on decedent's annuity insurance policies was invalid. We affirm the district court's award of decedent's checking account to respondent estate.

**Affirmed in part and reversed in part.**

---

4. Decedent's IRA was a self-directed rollover plan funded by proceeds from a 401(k) employee benefit plan. Minn.Stat. § 523.24, subd. 7 (2000), addresses beneficiary transactions, including trusts, guardianship, escrow, qualified and nonqualified benefits plans, and individual retirement assets. Minn.Stat.

§ 523.24, subd. 4 (2000), addresses banking transactions. Neither of these subdivisions contains any language limiting the ability of an attorney-in-fact to be a beneficiary of a checking account or an IRA asset. *See id.*, subds. 4, 7 (2000).